[No. A036948. First Dist., Div. Three. Jan. 4, 1988.]

DAVENPORT & CO., INC., Plaintiff and Respondent, v. WARREN EDWARD SPIEKER, JR., et al., Defendants and Appellants.

**[Opinion certified for partial publication.*]**

---

*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of parts III and IV.

**COUNSEL**

David Buoncristiani and Thelen, Marrin, Johnson & Bridges for Defendants and Appellants.

William D. Esselstein, Nancy T. Templeton and Robertson, Alexander, Luther, Esselstein, Shiells & Wright for Plaintiff and Respondent.

**OPINION**

**MERRILL, J.**—The Spiekers, Mr. and Mrs. Warren Edward Spieker, Jr.,[1] appeal from a judgment awarding damages in the sum of $14,350, plus interest, to Davenport & Co., Inc. (Davenport) for breach of a construction contract.

## I

The parties entered into a written contract which provided that Davenport, a licensed general contractor, would construct a cabana and a garage on the Spiekers' residential property. The contract provided that Davenport was to perform the work in accordance with drawings prepared by the Spiekers' architect and changes to those drawings made by the Spiekers. Some changes to the drawings were excluded from the contract price and

---

[1] The record fails to disclose the first name of Mrs. Spieker.

would be charged to the Spiekers as "extras." The parties agreed that the price for the work specified in the contract would be on a time and material basis, plus a 15 percent fee, not exceeding $130,000. In the event that the work described in the contract cost less than $130,000, the Spiekers would only be billed the actual cost plus 15 percent. Any changes or additions to the contract would be charged as extras. The contract also provided that changes would not be made without the Spiekers' approval. There was no explicit provision in the contract requiring change orders to be in writing.

Davenport began construction on the Spiekers' home in October 1984 and completed it in May 1985. During the construction, the Spiekers made substantial changes which increased the scope of the work to be performed and the compensation due Davenport. They ultimately paid Davenport a total of $178,623 for the work performed pursuant to the initial contract and for the extras. However, Davenport claimed that $37,331 was still unpaid for extra work performed on the Spiekers' residence.

At the court trial in this action, evidence was presented as to the cost of the contract work and the cost of the extras. Copies of the weekly invoices mailed to the Spiekers, indicating the costs for all materials, suppliers, subcontractors, labor and miscellaneous services provided, were admitted into evidence. Also admitted into evidence was a compilation of the costs incurred as of April 4, 1985, and a projection of costs yet to be incurred. The Spiekers requested further delineation of the cost of extra work, so an additional document was prepared outlining all the changes performed and their respective costs. Such document was also received in evidence. Mike McInnis, the job supervisor, and Mac McInnis, Davenport's president, prepared the document from the following: Mike McInnis's daily record of each change requested by the Spiekers, material invoices, subcontractor invoices, and employee timecards. The labor cost for each item of extra work was determined by a review of the timecards and by multiplication of the number of man-hours by the average labor rate. In those instances where the carpenter or laborer failed to designate the amount of time spent on the extra work, Mac McInnis estimated the labor cost. He testified that he had 10 years of construction experience and that he provides estimates for all the jobs on which Davenport submits bids.

In July 1985, upon the Spiekers' request, a second cost breakdown for the extra work was prepared. Again, the McInnises relied on material invoices, subcontractor invoices and timecards. However, as the July cost breakdown was compiled after the job was complete, it set forth a more accurate total price for the extra work performed.

The court determined that the actual cost of the contract work, exclusive of extras, was less than the $130,000 guaranteed maximum contract price

agreed upon by the parties. Further, the court found certain extra charges were not justified and awarded Davenport the sum of $14,350 plus interest.

## II

The Spiekers argue that Davenport's failure to comply with a provision of the Business and Professions Code,[2] which requires all home improvement contracts and changes thereto to be in writing, precludes its recovery for unwritten changes. We disagree.

Pursuant to section 7159, home improvement contracts for work in excess of $500 and any changes in such contracts, between a licensed contractor and an owner or tenant, must be evidenced by a writing and signed by all the parties. A violation of this provision by the licensee is a misdemeanor.

The question of the effect of noncompliance with section 7159 was considered by our Supreme Court in *Asdourian* v. *Araj* (1985) 38 Cal.3d 276 [211 Cal.Rptr. 703, 696 P.2d 95]. In that case, a contractor sued the owner for the balance due on remodeling work performed on the owner's property. The owner argued that the contractor was barred by section 7159 from recovering for the completed work as it was done pursuant to oral agreements. The court rejected this argument, holding that an oral contract in violation of section 7159 is merely voidable and not void.

The court stated that the public policy interest underlying section 7159 is to encourage written contracts for home improvements in order to protect unsophisticated consumers. (*Asdourian* v. *Araj, supra,* 38 Cal.3d at pp. 290, 292.) Further, although there is a general rule that contracts made in violation of a regulatory statute are void, courts will not apply such rule in certain situations. For example, the rule will not be applied where the statutory penalties exclude by implication the additional penalty of holding the contract void. In addition, in compelling cases, where the defendant's unjust enrichment will result at the plaintiff's expense, courts will enforce illegal contracts. (*Id.,* at pp. 291-292.)

The *Asdourian* court reasoned that although the present statute only makes violation punishable as a misdemeanor, the apparent legislative intent was that such penalty was not exclusive of others. The original version of section 7159 included the provision that " '[c]ontracts which fail to comply with the provisions of this section shall *not* be deemed to be invalid

---

[2] All further statutory reference is to the Business and Professions Code unless otherwise noted.

solely because of noncompliance.'" (*Id.,* at p. 292, italics added, quoting Stats. 1969, ch. 1583, § 15, pp. 3220-3221.) As this express provision was deleted by subsequent amendment, it must be presumed that the Legislature intended to change the law. The court concluded that the Legislature did not intend the express penalty provisions of section 7159 to be exclusive. (*Id.,* at p. 292.)

The court stated: "Although the penalties provided by section 7159 are no longer exclusive, there is no indication that the Legislature intended that *all* contracts made in violation of section 7159 are void. Absent an express statutory *prohibition,* other exceptions to the general rule that illegal contracts are unenforceable may be applied." (*Asdourian* v. *Araj, supra,* 38 Cal.3d at p. 292.)

The *Asdourian* court concluded that the factors of that particular case supported the enforcement of the violative contracts. First, the defendants in that case were not members of the group primarily in need of the statute's protection, i.e., unsophisticated consumers. For this reason, the statutory policy would not be defeated by permitting recovery. Second, the court considered that a contract made in violation of section 7159 does not involve the type of illegality which automatically renders a contract void. It is merely malum prohibitum, and not malum in se. The oral contracts to remodel the residential property in *Asdourian* were not intrinsically illegal, and therefore only voidable. Finally, the court reasoned that if the contract was not enforced, defendants would be permitted to retain the value of the benefits bestowed by plaintiff without compensating him. (*Asdourian* v. *Araj, supra,* 38 Cal.3d at p. 293.)

Application of these principles to the instant case leads us to the conclusion that Davenport's noncompliance with section 7159 does not preclude its recovery for work performed on Spiekers' property pursuant to unwritten change orders. The record demonstrates that Mr. Spieker, who negotiated the extra work requests, is a general partner of Trammell Crow Company, a real estate investment and development firm. He testified that he had been involved in the construction business for 20 years. Like the defendant in *Asdourian,* Mr. Spieker is not a member of the group of unsophisticated consumers which section 7159 is intended to protect. Thus, recovery for work pursuant to unwritten change orders would not contravene the public policy interest behind section 7159.

In addition, there is nothing about the nature of the contract in this case which makes it automatically void. An agreement to perform residential remodeling work is not an inherently illegal or immoral contract.

Finally, the particular facts of this case support the conclusion that Davenport should be compensated for the work performed pursuant to the unwritten change orders. Mr. Spieker, as general partner of a real estate investment and development company, was not an unsophisticated homeowner. He had the opportunity and communicative abilities to insist that written change orders be presented to him for signature prior to the performance of the work. Instead, the Spiekers made many changes and additions to the written contract in an informal fashion. There is no indication in the record that the Spiekers were dissatisfied with the work performed on their residence. They cannot be permitted to retain the benefits of the oral change orders without compensating Davenport.

III, IV*

. . . . . . . . . . . . . . . . . . . . .

V

The judgment is affirmed.

White, P. J., and Barry-Deal

---

*See footnote, *ante,* page 566.