[No. B215201. Second Dist., Div. Five. May 6, 2010.]

DIAA YASSIN, Plaintiff and Appellant, v.
VINICIO SOLIS et al., Defendants and Respondents.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

*Pursuant to California Rules of Court, rules 8.1100 and 8.1110, this opinion is certified for publication with the exception of Discussion, part B.

## COUNSEL

Jorgensen & Salberg, Richard Allen Jorgensen and Jeffrey R. Salberg for Plaintiff and Appellant.

Law Offices of Ashley D. Posner, Ashley D. Posner; Law Offices of Martin S. Rudoy and Martin S. Rudoy for Defendants and Respondents.

OPINION

MOSK, J.—

## INTRODUCTION

Plaintiff and appellant Diaa Yassin (Yassin), a contractor, was hired by defendants and respondents Vinicio Solis and Sonia Solis (collectively Solises) to do improvement work on the Solises' home. Yassin sued for money he claimed was owed him, and the Solises cross-complained, inter alia, for breach of contract in connection with the work performed. The trial court awarded Yassin nothing and the Solises $50,000 in damages and, pursuant to Civil Code section 3260, subdivision (g) (penalties and attorney fees for wrongfully withheld retention payments in certain construction contracts), attorney fees of $36,205.14.[1] On appeal, Yassin contends, inter alia, that the claim for the last payment due under the contract upon completion of the work and issuance of the certificate of occupancy did not involve a retention under section 3260, and therefore the trial court erred in awarding attorney fees under that section. In the published portion of this opinion we hold that although a party does not have to plead that it is seeking attorney fees in order to recover those fees, the last contractual payment due Yassin was not a retention under section 3260, and therefore the Solises, as the prevailing parties in the Solises' claim to recover that amount, were not entitled to attorney fees under section 3260, subdivision (g). We also hold that section 3260.1 does not authorize the award of attorney fees. In the unpublished portion of the opinion, we hold that there was substantial evidence of damage. Accordingly, we affirm the award of damages, but reverse the attorney fees award.

## BACKGROUND

Yassin, a licensed contractor, contracted with the Solises to construct an addition on the Solises' home and to do additional work on the home for a total of $75,000. The contract provided as follows: "The contractor shall furnish to the owner all of the labor and material required for the construction of a new addition . . . [a]ccording to building department approved plans and specifications . . . . The owner shall pay to the contractor for furnishing the labor and materials and for the construction of this residence the sum of $75,000, paid as follows: $7,500 downpayment on the signing of this Agreement; $22,500 Foundation placement; $22,500 Rough Framing Inspection; $15,000 Final Inspection; $7,500 Certificate of Occupancy. 3. The final payment shall be made upon completion of the work and before occupancy. . . ." There were some change orders. After the city inspector signed a

---

[1] All further statutory references are to the Civil Code unless otherwise indicated.

"final inspection" on the project (which was actually the "drywall inspection"), Yassin demanded payment of $30,000. Yassin had already received $55,850 from the Solises. The Solises claimed that Yassin had performed deficient work and violated the Contractors' State License Law (Bus. & Prof. Code, § 7000 et seq.), the subcontractors were unlicensed, and the work deviated from the plans and was substandard. The Solises asserted that as a result of these deficiencies, they terminated Yassin from the job and hired another contractor to complete the work. The Solises contended at trial that Yassin caused repeated problems in connection with the project, created difficulties in communications, made spurious claims of change orders, delayed the project, and caused numerous work deficiencies.

Yassin sued the Solises for the $30,900 he claimed was owed him. The Solises cross-complained for damages. Yassin submitted evidence attributing the alleged construction defects to preexisting conditions on the property. The Solises contended that it would cost $63,728.10 to repair the damage caused by Yassin.

The trial court awarded Yassin nothing on his claim and awarded the Solises on their cross-complaint $50,000 in damages. After a posttrial motion based on sections 3260 and 3260.1, the trial court awarded the Solises $36,205.14 in attorney fees under section 3260, subdivision (g) on the theory that the Solises prevailed on Yassin's claim for $7,500 due and payable upon completion of the work and issuance of a certificate of occupancy,[2] which payment the trial court deemed to be a retention under section 3260.

Yassin asserts on appeal that there was a lack of substantial evidence to support the Solises' claim for damages; that sections 3260 and 3260.1 are inapplicable to this action because there was no withholding of progress payments or retention of monies due under the contract; that the failure of any of the parties to invoke in their pleadings sections 3260 and 3260.1 precludes an award of attorney fees under those sections; and that any liability under section 3260.1 is barred by the one-year statute of limitations. (Code Civ. Proc., § 340, subd. (a).)

## DISCUSSION

### A. *Standard of Review*

We review a contention that evidence does not support a damage award under the substantial evidence standard of review. (See *Major v. Western*

---

[2] "The certificate of occupancy, which is issued only after completion of a structure and its inspection by a building inspector, evidences that what has been accomplished is in compliance with the building code, and with the nonuse provisions of the [zoning] ordinance." (4 Ziegler, Rathkopf's The Law of Zoning and Planning (4th ed. 2010) § 69:24, p. 69-73.)

*Home Ins. Co.* (2009) 169 Cal.App.4th 1197, 1203, fn. 1 [87 Cal.Rptr.3d 556].) The normal standard of review for a challenge to the attorney fees award is abuse of discretion, but " 'de novo review of such a trial court order is warranted where the determination of whether the criteria for an award of attorney fees and costs in this context have been satisfied amounts to statutory construction and a question of law.' " (*Connerly v. State Personnel Bd.* (2006) 37 Cal.4th 1169, 1175 [39 Cal.Rptr.3d 788, 129 P.3d 1].)

### B. *Substantial Evidence of Damage**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### C. *Attorney Fees*

#### 1. *Applicable Facts*

There was no attorney fees clause in the contract. The Solises moved for attorney fees under sections 3260 and 3260.1. The trial court awarded the Solises $36,205.14 in attorney fees pursuant to section 3260, subdivision (g), reducing the amount requested.

Section 3260.1, subdivision (b) provides, "Except as otherwise agreed in writing, the owner shall pay to the contractor, within 30 days following receipt of a demand for payment in accordance with the contract, any progress payment due thereunder as to which there is no good faith dispute between the parties. In the event of a dispute between the owner and the contractor, the owner may withhold from the progress payment an amount not to exceed 150 percent of the disputed amount. If any amount is wrongfully withheld in violation of this subdivision, the contractor shall be entitled to the penalty specified in subdivision (g) of Section 3260." Section 3260, in relevant part, provides: "(b) The retention proceeds withheld from any payment by the owner from the original contractor, or by the original contractor from any subcontractor, shall be subject to this section. [¶] (c) Within 45 days after the date of completion, the retention withheld by the owner shall be released. . . . [¶] . . . [¶] (g) In the event that retention payments are not made within the time periods required by this section, the owner or original contractor withholding the unpaid amounts shall be subject to a charge of 2 percent per month on the improperly withheld amount, in lieu of any interest otherwise due. Additionally, in any action for the collection of funds wrongfully withheld, the prevailing party shall be entitled to his or her attorney's fees and costs."

The Solises paid Yassin a downpayment and various progress payments. The Solises refused to pay Yassin the $15,000 required after the "Final

***

*See footnote, *ante*, page 524.

Inspection" because the Solises, inter alia, did not believe the drywall inspection was the final inspection. The Solises ordered Yassin off the project in September 2006 without paying him either the $15,000 final inspection payment or the $7,500 due upon the issuance of the certificate of occupancy. The Solises contracted with another contractor in December 2006 to complete the work. Yassin filed a mechanic's lien and then in July 2007, filed this action.

The trial court concluded that Yassin sought to recover retention proceeds held by the Solises—specifically the $7,500 due upon the issuance of certificate of occupancy—and therefore, as the "prevailing parties" on that claim, the Solises were entitled to an award of attorney fees under section 3260, subdivision (g). The trial court stated that section 3260.1 did not provide for attorney fees.

### 2. *Rules of Interpretation*

■ "Our task in interpreting these statutes is 'to ascertain and effectuate legislative intent.' [Citation.]" (*Bernard v. Foley* (2006) 39 Cal.4th 794, 804 [47 Cal.Rptr.3d 248, 139 P.3d 1196].) The search for intent, however, takes a specific form. " ' "Because statutory language 'generally provide[s] the most reliable indicator' of [legislative] intent [citations], we turn to the words themselves, giving them their 'usual and ordinary meanings' and construing them in context [citation]." [Citation.] If the language contains no ambiguity, we presume the Legislature meant what it said, and the plain meaning of the statute governs. [Citation.]' " (*People v. Allegheny Casualty Co.* (2007) 41 Cal.4th 704, 708–709 [61 Cal.Rptr.3d 689, 161 P.3d 198].) A court in interpreting a statute should employ the common usage and understanding of the statute's words. (*People v. Linwood* (2003) 105 Cal.App.4th 59, 69 [129 Cal.Rptr.2d 73]; *Smith v. Peterson* (1955) 131 Cal.App.2d 241, 246 [280 P.2d 522].) "It is a familiar rule of statutory construction that common words are to be extended to all the objects which, in their usual acceptation they describe or denote, and that technical terms are to be allowed their technical meaning and effect, unless in either case the context indicates that such construction would frustrate the real intention of the law-making power. Technical words when relating to a trade, when used in a statute or ordinance, dealing with the subject matter of such trade, are to be taken in their technical sense and will be so construed unless the context or other considerations show a contrary intent." (*In re Smith* (1928) 88 Cal.App. 464, 467–468 [263 P. 555]; see 2A Singer & Singer, Sutherland Statutes and Statutory Construction (7th ed. 2007) § 47:29, p. 474 ["In the absence of legislative intent to the contrary, or other overriding evidence of a different meaning, technical terms or terms of art used in a statute are presumed to have their technical

meaning." (fns. omitted)]; *id.*, § 47:31, pp. 483–486.)[3] " ' "[W]here a word of common usage has more than one meaning, the one which will best attain the purposes of the statute should be adopted, even though the ordinary meaning of the word is enlarged or restricted and especially in order to avoid absurdity or to prevent injustice." ' " (*Friends of Mammoth v. Board of Supervisors* (1972) 8 Cal.3d 247, 260 [104 Cal.Rptr. 761, 502 P.2d 1049], disapproved on another ground in *Kowis v. Howard* (1992) 3 Cal.4th 888, 896–897 [12 Cal.Rptr.2d 728, 838 P.2d 250].)

■ "To the extent this examination of the statutory language leaves uncertainty, it is appropriate to consider 'the consequences that will flow from a particular interpretation. [Citation.]' [Citation.] Where more than one statutory construction is arguably possible, our 'policy has long been to favor the construction that leads to the more reasonable result. [Citation.]' [Citation.] This policy derives largely from the presumption that the Legislature intends reasonable results consistent with its apparent purpose. [Citation.] Thus, our task is to select the construction that comports most closely with the Legislature's apparent intent, with a view to promoting rather than defeating the statutes' general purpose, and to avoid a construction that would lead to unreasonable, impractical, or arbitrary results. [Citations.]" (*Copley Press, Inc. v. Superior Court* (2006) 39 Cal.4th 1272, 1291 [48 Cal.Rptr.3d 183, 141 P.3d 288].)

### 3. *Contentions of the Parties*

Even though the parties disagree on what was meant by "Final Inspection," the parties agree that after that inspection, Yassin was required to do more work and that the Solises terminated Yassin from the job before he had completed it. Accordingly, the $15,000 final inspection payment claimed by Yassin was payable under the contract before completion of the work. The final payment due under the contract was the $7,500 to be paid upon completion of the work and issuance of the certificate of occupancy.

Yassin sued for the unpaid portion of the contract price, plus work on change orders and extras. The trial court concluded that at least the final $7,500 payment required under the contract was a retention amount covered by section 3260. The trial court permitted the Solises to recover their attorney fees to defend against the amount claimed that constituted what the trial court considered a retention—i.e., the $7,500 payment due upon the issuance of the certificate of occupancy. Yassin asserts on appeal that neither he nor the Solises ever asserted in the trial court that the claim was brought pursuant to

---

[3] See *Murray's Iron Works, Inc. v. Boyce* (2008) 158 Cal.App.4th 1279, 1299, footnote 13 [71 Cal.Rptr.3d 317] (pointing to construction industry usage to determine legislative intent).

section 3260, Yassin never requested a penalty, and the final certificate of occupancy payment did not constitute a retention amount under section 3260.

### 4. *No Pleading Requirement or Applicable Period of Limitations*

■ There is no requirement that a party plead that it is seeking attorney fees, and there is no requirement that the ground for a fee award be specified in the pleadings. (Pearl, Cal. Attorney Fee Awards (Cont.Ed.Bar 2d ed. 2008) § 3.1, p. 68; 7 Witkin, Cal. Procedure (5th ed. 2008) Judgment, § 295, p. 895; but cf. *Alpha Mechanical, Heating & Air Conditioning, Inc. v. Travelers Casualty & Surety Co. of America* (2005) 133 Cal.App.4th 1319, 1338 [35 Cal.Rptr.3d 496] [claim that complaint did not seek relief under Bus. & Prof. Code, § 7108.5 and Civ. Code, § 3260 for *penalty interest* was forfeited by not raising the claim at trial].) Yassin asserts that the "penalty" under section 3260.1 is barred by the statute of limitations. But the trial court expressly did not impose a penalty or award fees under section 3260.1. As the trial court noted, section 3260.1 did not authorize an award of attorney fees. (See *Murray's Iron Works, Inc. v. Boyce, supra,* 158 Cal.App.4th at p. 1299, fn. 14 ["By this we do not express a view that Civil Code section 3260.1 supports an award of attorney fees even in a dispute over a contractually agreed progress payment. (See *Denver D. Darling[, Inc. v. Controlled Environments Construction, Inc.* (2001)] 89 Cal.App.4th [1221,] 1241 [108 Cal.Rptr.2d 213] [implicitly distinguishing between the Civ. Code § 3260 2 percent 'penalty' provision and the attorney fees provision of subd. (g)].)"]; see also *McAndrew v. Hazegh* (2005) 128 Cal.App.4th 1563, 1566 [27 Cal.Rptr.3d 836] ["the 2 percent penalty or attorney fees . . . under section 3260, subdivision (g)"]; cf. *Morton Engineering & Construction, Inc. v. Patscheck* (2001) 87 Cal.App.4th 712, 717 [104 Cal.Rptr.2d 815] [with respect to a prevailing party clause, "[a] provision that has equal application to both parties is not a sanction against one of the parties"].) Thus, we do not have to reach Yassin's argument that the statute of limitations bars a claim for attorney fees under section 3260.1.

### 5. *Application of Statute*

■ The last payment of the installment payments was to be made after the completion of the work and issuance of a certificate of occupancy. That last payment did not constitute "retention proceeds withheld from any payment by the owner from the original contractor . . . ." (§ 3260, subd. (b).) By its terms, that statute refers to retention proceeds as being funds *withheld from a payment,* not the payment itself. Retention amounts are a form of security generally retained by the owner from prior payments due for work previously performed.

Authorities have noted that a retention occurs when the owner retains a percentage from each progress payment as a form of security against potential mechanics' liens and as security that the contractor will complete the work properly and repair defects. (Acret et al., 1 Cal. Construction Contracts, Defects, and Litigation (Cont.Ed.Bar 2009) Drafting Construction Contracts, § 2.31, p. 111; Gibbs & Hunt, Cal. Construction Law (16th ed. 2000) § 3.02[A][5], p. 103 ["Most construction agreements contain a provision for retention, which is a percentage (usually 10 percent) of the amounts due the contractor . . . . [¶] Final payment . . . consists of the entire unpaid balance of the contract amount, including the retention."]; see 1 Stein, Construction Law (2010) ¶ 3.01[2][e], p. 3-22 ["A designated amount of each payment (usually between 5 and 10%) is held back by the owner as 'retainage' or retention"]; 2 Stein, Construction Law (2009) ¶ 7.04[1][a], p. 7-22 ["Retainage is the withholding of a percentage of the contract funds earned by a contractor. . . . As a fixed percentage is deducted from progress payments as retainage, a pool of money accumulates for distribution at the finish of a construction project."]; Acret's Cal. Construction Law Manual: Contractor's Ed. (2009–2010 Cum. Supp.) § 1:106, p. 15 ["a retention arises when a construction contract is paid for in installments and the owner withholds a percentage of each payment (usually 10%) as security for the completion of the work"]; Harris, edit., Dict. of Architecture and Construction (4th ed. 2006) p. 812 ["retention 1. The withholding of a portion (usually 10%) of a periodic payment to a contractor, by prior agreement, for work completed"]; 3 Bruner & O'Connor, Construction Law (2002) § 8.18, pp. 39–40 ["A common contract approach to reducing a contractee's risk that its contractor will fail to fully perform its contractual obligations is to withhold a percentage of the sums due until the work is substantially complete. This percentage is known as 'retainage.' . . . The common contracting scheme is to pass down through the contracting tiers the owner's right to withhold retainage"]; *id.*, § 18:19, p. 41 [warranty retainage]; *id.*, § 8.18.50 (2009 Cum. Supp.) [retainage statutes].) Miller and Starr referred to an installment contract with various progress payments including "20% when the building is completed, and the notice of completion recorded; and the final 20% after the lien period has expired" and added that "[t]his final payment, which is held until the lien period expires, is termed the 'retention.' " (10 Miller & Starr, Cal. Real Estate (3d ed. 2001) § 27:50, pp. 135–136.) In reality, the final payment to which Miller and Starr refer as being "held" during the lien period has, in effect, been withheld by the owner from payments for work the contractor previously performed, as security against subcontractor liens; those funds are paid to the contractor when the security is no longer required. That payment is therefore a retention. Those funds are not remitted to the contractor as compensation for new or additional work performed on the project during the lien period.

Courts have not viewed the last payment due upon completion of the project as a retention. In *McAndrew v. Hazegh, supra,* 128 Cal.App.4th at pages 1566–1567 the court described the application of section 3260 as follows: "Before the 2 percent penalty or attorney fees may be recovered under section 3260, subdivision (g), the contractor must establish that the owner being sued has actually withheld retention proceeds/payments from the contractor. Retention proceeds or retention payments are 'payments relating to work already done but which are not presently paid, which instead are withheld until completion of 100 percent of the [contractor's] work.' (*Western Landscape Construction v. Bank of America* (1997) 58 Cal.App.4th 57, 59 [67 Cal.Rptr.2d 868].) Typically, an owner withholds retention proceeds/payments only where the construction contract calls for installment payments. (10 Miller & Starr, Cal. Real Estate[, *supra,*] § 27:50, pp. 135–136.) The withholding of retention payments provides the contractor with incentive to complete the work, while reducing the owner's risk of the contractor's nonperformance. (*Cates Construction, Inc. v. Talbot Partners* (1999) 21 Cal.4th 28, 55–56 [86 Cal.Rptr.2d 855, 980 P.2d 407].) [¶] 'Most construction agreements contain a provision for retention, which is a percentage (usually 10 percent) of the amounts due the contractor but held by the owner as a type of security for the contractor's full and complete performance and to satisfy potential lien claims at the end of the project. [¶] *Final payment is made at the end of the project when the work has been fully performed and consists of the entire unpaid balance of the contract amount, including the retention. In fact, the release of the retention usually constitutes most or all of the final payment.*' (Gibbs & Hunt, Cal. Construction Law[, *supra,*] § 3.02[A][5], p. 103.) [¶] . . . [¶] . . . *We reject McAndrew's claim that 'retention' means any unpaid sums still owed to a contractor.* As used in section 3260, 'retention' means that the owner will hold back a percentage (usually 10 percent) of the amounts due the contractor as a type of security for the contractor's full and complete performance. (Gibbs & Hunt, Cal. Construction Law, *supra,* § 3.02[A][5], p. 103.)" (Italics added.) The court, in effect, recognized that a final payment due at the end of the contract performance was not a retention, and that not every unpaid sum is a retention; rather, the final payment included retentions—i.e., amounts retained from prior progress payments. (128 Cal.App.4th at pp. 1566–1567.) Indeed, the court said, "Here, the contract between McAndrew and Hazegh did not call for installment payments. Instead, it stated that the entire contract price would be paid in one lump sum at the time of completion. It did not contemplate the withholding of retention proceeds/payments." (*Id.* at p. 1567.) Thus, a sum not to be paid until completion of the work, whether in an installment contract when no sums have been withheld from the installments or in a contract with no installments, would not be a retention. Moreover, a sum

payable on completion of the work is not comparable to amounts held by the owner as security until the end of a lien or warranty period that might be viewed as a retention.

■ If a statute is ambiguous, extrinsic aids in interpretation include statutes in pari materia, i.e., relating to the same matter or subject. (See *Altaville Drug Store, Inc. v. Employment Development Department* (1988) 44 Cal.3d 231, 236, fn. 4 [242 Cal.Rptr. 732, 746 P.2d 871]; *Old Homestead Bakery, Inc. v. Marsh* (1925) 75 Cal.App. 247, 258 [242 P. 749]; see also *California Teachers Assn. v. Governing Bd. of Rialto Unified School Dist.* (1997) 14 Cal.4th 627, 642 [59 Cal.Rptr.2d 671, 927 P.2d 1175]; 2B Singer & Singer, Sutherland Statutes and Statutory Construction (7th ed. 2008) §§ 51:1 to 51:3, pp. 196–279.) Statutes concerning public contracts for construction and related services that deal with retentions may be relevant to our interpretation of section 3260. Those statutes refer to "retention proceeds withheld from any payment" (Pub. Contract Code, § 7107, subd. (b)) and "retention proceeds withheld" (Pub. Contract Code, § 7200, subd. (b)). Public Contract Code section 7107, subdivision (g) provides that "[i]f a state agency retains an amount greater than 125 percent of the estimated *value of the work yet to be completed* pursuant to Section 10261 . . . ." (Italics added.) Public Contract Code section 10261 provides that, "[t]he department shall withhold not less than 5 percent of the contract price until final completion and acceptance of the project. However, at any time after 95 percent of the work has been completed, the department may reduce the funds withheld to an amount not less than 125 percent of the estimated value of the work yet to be completed . . . ." These provisions indicate that retentions are sums withheld as security from amounts earned prior to the completion of work. Public Contract Code section 6106.5, subdivision (c) refers to a "retention [that] continues for a period of 60 days beyond the completion of *phased services*" (italics added), suggesting that retentions apply to installment contracts and are amounts withheld from progress payments. Public Contract Code section 20104.50, subdivision (e)(2) provides, "A 'progress payment' includes all payments due contractors, except that portion of the final payment *designated by the contract as retention earnings*." (Italics added.) A final payment or portion thereof not designated as a "retention" is not a retention. (See also Pub. Contract Code, § 7202, subd. (a) ["[t]he Department of Transportation is prohibited from withholding retention proceeds when making progress payments to a contractor for work performed on a transportation project"].) These provisions are consistent with the usage by authorities of the term "retention" and support our interpretation of the word "retention" in section 3260.

■ Thus, the usage of the term "retention" in construction contracts does not contemplate that the final payment constitutes a retention. The final payment for work done does not involve an amount "retained" from any

payment due. A retention has to be an amount that by contract has been retained from an amount owing. This usage is consistent with the common usage or understanding of the word. The contract simply specified a time for a payment for work completed and did not provide for an amount to be withheld from any payment. A retention cannot mean any unpaid sum.

The trial court stated that since the final payment was not due until a certificate of occupancy was issued, the final payment is a retention because the amount was to be withheld until the work was approved. This position is tenable, but does not, in our view, comport with the usage and purpose of the term "retention." The contract contemplated that the work would not be considered completed until a certificate of occupancy was issued. The final payment under the contract was to be for completed work. Holding the final payment until the lien period has expired is a different matter, for there, the retention bears no relationship to the progress of the work. Miller and Starr make this distinction when referring to installment payments. They do not label the payment due upon the recordation of the notice of completion as a retention but only refer to the amount held until the completion of the lien period as a "retention." (10 Miller & Starr, Cal. Real Estate, *supra*, § 27:50, pp. 135–136.)

In *Murray's Iron Works, Inc. v. Boyce, supra*, 158 Cal.App.4th at pages 1298–1299, the court said that the downpayment and final payment are not progress payments under section 3260.1, which provides for a penalty for amounts wrongfully withheld from progress payments. But that does not mean that a final payment due at the conclusion of performance under an installment contract is a retention. It is simply the last installment. If the last installment payment is considered a retention just because it is the last payment for the work already completed, then every progress payment for work completed would be a retention. This, of course, makes no sense.

To interpret section 3260 as meaning the final progress payment is a retention would not carry out the goals of the statute and would lead to questionable results. The purpose of the statute is to insure prompt payment to contractors and subcontractors of amounts withheld, which amounts are in reality a form of security. When the owner, pursuant to the contract, withholds amounts from progress payments as security, the failure to pay timely those amounts, if not justified, would result in a penalty and an award of attorney fees. As section 3260.1 imposes a penalty for the wrongful withholding of a progress payment, it makes sense that section 3260 imposes a penalty on the wrongful withholding of amounts retained from the progress payments—i.e., the retention. The remedy for the failure to pay a last installment payment upon completion of the services is simply damages for a breach of contract.

 Here the $7,500 final payment due at the completion of the work and issuance of the certificate of occupancy was not a retention payment contemplated by section 3260. Accordingly, a claim to recover such an amount is a simple breach of contract claim and not a claim to recover a retention under section 3260. Thus, the Solises were not entitled to attorney fees.

## DISPOSITION

The judgment in favor of the Solises on liability and damages is affirmed, and the award of attorney fees is reversed. No costs are awarded.

Armstrong, Acting P. J., and Kriegler, J., concurred.