[No. B211257. Second Dist., Div. Four. Sept. 1, 2010.]

HINERFELD-WARD, INC., Plaintiff, Cross-defendant and Respondent, v. MARK LIPIAN et al., Defendants, Cross-complainants and Appellants.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

\*Pursuant to California Rules of Court, rules 8.1100 and 8.1110, this opinion is certified for publication with the exception of part III of the Discussion.

## COUNSEL

Law Offices of John P. Dwyer and John P. Dwyer for Defendants, Cross-complainants and Appellants.

Baker & Associates, Mark E. Baker, Dean A. Reeves; Law Office of Russell R. Arens, Russell R. Arens and Richard E. Nusbaum for Plaintiff, Cross-defendant and Respondent.

## OPINION

**EPSTEIN, P. J.**—The appellants in this litigation are homeowners who embarked on a major residential home improvement project. They appeal from a judgment in these cross-actions in favor of their general contractor that awarded them only $1,000 in damages on their negligence cause of action. They contend the trial court erred in enforcing an oral contract in violation of statutory requirements that the contract be in writing; that the contractor was not entitled to an award of statutory attorney fees; and that the trial court erred in striking testimony by one of the homeowners about damages.

In the published portion of this opinion, we conclude that the oral contract was enforceable and that the contractor is entitled to attorney fees for the homeowners' delay in making progress payments. In the unpublished portion of our opinion we conclude that the trial court's error in striking the homeowner's lay testimony was harmless.

### FACTUAL AND PROCEDURAL SUMMARY

Appellants Mark and Mary Lipian purchased a single family home in Los Angeles, intending to undertake a major remodel of that property. They

retained an architect, Michael Folonis, who began design of the project in early 2000. After the initial design phase, Cameron Aston, a general contractor, was retained. Aston eventually became frustrated with repeated design changes and left the project in 2004. Folonis recommended that the Lipians retain respondent Hinerfeld-Ward, Inc., as the new general contractor, based on prior experience with that firm and its reputation for high-end construction work. Hinerfeld-Ward (Hinerfeld) is the only respondent on appeal. Neither Folonis nor a lawyer assisted the Lipians in negotiating an agreement with Hinerfeld.

It is undisputed that the Lipians and Hinerfeld never entered into a written contract that included the scope of the work to be done. The work began without a final agreement but, as negotiations continued, the parties entered into a memorandum of understanding and the remodeling and construction work continued. Over the course of the next two years, Hinerfeld submitted 19 payment applications for work which had been completed. All of these were approved by Folonis and paid by the Lipians.

In April 2006, the Lipians disputed some of the charges in payment application 20, which included project management and supervision charges. They agreed to a partial payment for work done by subcontractors. The relationship between the Lipians and Hinerfeld deteriorated over the next several months. A dispute arose regarding commencement of work on a separate building the Lipians planned to build on their property to house a theater, gym, and office. The Lipians terminated Hinerfeld's services in September 2006. At that time, there was an unpaid balance owed Hinerfeld of approximately $200,000.

Hinerfeld sued the Lipians for breach of oral contract, quantum meruit, wrongful withholding of progress payments, and related causes of action. The Lipians cross-complained for breach of contract, negligence, fraud, violation of Business and Professions Code section 17200, negligent misrepresentation, recovery on bond, and for a declaration that the oral construction contract was void. In addition to Hinerfeld, the Lipians named Tom Hinerfeld, its principal, and the firm's indemnity company, American Contractors Indemnity Company.[1]

The case was tried to a jury, which returned a special verdict. It found the parties had a contract and that Hinerfeld had substantially complied with its terms. It found the Lipians had breached the contract and that their breach was not justified, and that Hinerfeld had not breached the contract. The jury

---

[1] American Contractors Indemnity Company obtained nonsuit on the Lipians' cause of action to recover on the bond it had issued. The Lipians dismissed their unfair business practice claim during trial.

found Hinerfeld's damages for breach of the contract to be $202,181.58 and that the Lipians had withheld an amount more than 150 percent from a progress payment. On the causes of action for quantum meruit and foreclosure of a mechanic's lien, the jury found the reasonable value of the services rendered by Hinerfeld to be $820,000, and that the Lipians failed to pay that amount. The jury found Hinerfeld negligent, but only $1,000 in damages was awarded the Lipians on their cross-action. The jury rejected the Lipians' causes of action for fraud and negligent misrepresentation, finding no false representations were made by Tom Hinerfeld.

The trial court entered judgment for Hinerfeld for $202,181.58, plus prejudgment interest of $36,232.01 and costs of $38,953.19. The Lipians were given judgment for $1,000. The Lipians' motion for new trial was denied. Hinerfeld's posttrial motion for a monthly 2 percent charge on the amount wrongfully withheld by the Lipians was granted and $54,736.36 was assessed against them. The trial court awarded Hinerfeld $200,000 in attorney fees. Timely appeals by the Lipians from the judgment, the attorney fee award, and from the award of $54,736.36 were filed and consolidated.

## DISCUSSION

### I

The Lipians argue the court erred in enforcing the oral home improvement contract with Hinerfeld because Business and Professions Code section 7159 (section 7159) requires that such contracts be in writing. The statute applies to " 'home improvement contracts' between a contractor and an 'owner or tenant' for 'work upon a building or structure for proposed repairing [or] remodeling' where the aggregate contract price exceeds $500." (*Asdourian v. Araj* (1985) 38 Cal.3d 276, 289 [211 Cal.Rptr. 703, 696 P.2d 95] (*Asdourian*).) The definition of " 'home improvement contract' " includes an agreement between a contractor and an owner for the performance of a home improvement. (§ 7159, subd. (b).)

The statute, part of a larger consumer protection statutory scheme, has been revised and reorganized repeatedly since first enacted in 1969. (See *Asdourian, supra*, 38 Cal.3d at p. 292; Historical and Statutory Notes, 3D West's Ann. Bus. & Prof. Code (2010 ed.) foll. § 7159, pp. 162–166.)[2] The requirement that such contracts be in writing has been a part of the law for decades. In

_____

[2] A major reorganization of the statutory scheme governing home improvement contracts in 2004, which repealed and reenacted section 7159, was characterized as "restatements or reorganizations of existing law" with respect to the requirements for a home improvement contract. (Sen. Com. on Judiciary, Analysis of Sen. Bill No. 30 (2003–2004 Reg. Sess.) as amended Apr. 21, 2003, p. 7, underscoring omitted.)

*Calwood Structures, Inc. v. Herskovic* (1980) 105 Cal.App.3d 519, 522 [164 Cal.Rptr. 463] (*Calwood*), disapproved in part on other grounds in *Asdourian, supra*, 38 Cal.3d at page 293, footnote 11, the court identified the primary purpose of section 7159 to be "a protection for consumers in an economic area which otherwise might well provide opportunity for abuse by contractors."

█ The issue is whether an oral contract for home improvements, in violation of section 7159, is void or merely voidable. The general rule is that "a contract made in violation of a regulatory statute is void. [Citation.] Normally, courts will not ' "lend their aid to the enforcement of an illegal agreement or one against public policy . . . ." ' [Citations.]" (*Asdourian, supra*, 38 Cal.3d at p. 291.) But as the Supreme Court recognized in *Asdourian*, " 'the rule is not an inflexible one to be applied in its fullest rigor under any and all circumstances. A wide range of exceptions has been recognized.' [Citation.]" (*Ibid.*)

In *Calwood*, the court reversed an order sustaining a demurrer to a complaint for unpaid fees brought by a contractor on an oral home improvement contract. The trial court had reasoned that the contract was void because it did not comply with section 7159. The *Calwood* court noted that "section 7159 contains no express prohibition respecting the enforceability of contracts made contrary to its terms, but is limited in its specification of penalty to criminal fine or imprisonment." (*Calwood, supra*, 105 Cal.App.3d at p. 521.) The oral contract was enforceable because the work had been completed, was performed under authority granted by the owners, and was ratified by them. The court reasoned that the violation of section 7159 did not involve serious moral turpitude. The policy of consumer protection would not be furthered by finding the contract before it to be unenforceable, since the transaction was completed. If the contract was not enforced, the owners would be unjustly enriched at the expense of the contractor, a penalty disproportionately harsh in relation to the violation. (*Calwood, supra*, 105 Cal.App.3d at p. 522.)

*Asdourian* involved oral contracts for home improvements between homeowners and their contractor. The court found "[n]othing in the statute [which] declares that an oral contract entered into in contravention of section 7159 shall be void." (*Asdourian, supra*, 38 Cal.3d at p. 291.) While the court concluded that the Legislature did not intend the express penalty provisions of section 7159 to be exclusive, it found "no indication that the Legislature intended that *all* contracts made in violation of section 7159 are void." (38 Cal.3d at p. 292.) Absent an express legislative prohibition, the *Asdourian* court concluded it could apply exceptions to the general rule that illegal contracts are unenforceable. (*Ibid.*)

The contracts in *Asdourian* were held enforceable because as real estate investors, the owners were not within the class of unsophisticated consumers the statute was designed to protect. The Supreme Court concluded that in this context, the misdemeanor penalties provided in section 7159 were sufficient and that the policy underlying the statute would not be defeated if the contractor was allowed to recover for work performed. (*Asdourian, supra*, 38 Cal.3d at p. 292.) The court also concluded that a contract in violation of section 7159 does not present the type of illegality that automatically renders a contract void. Instead, the contracts were found merely "*voidable* depending on the factual context and the public policies involved." (*Asdourian*, at p. 293.) Citing *Calwood, supra*, 105 Cal.App.3d at page 522, the *Asdourian* court reasoned that the failure to observe strict statutory formalities was understandable because the contractor and owners were friends and had prior business dealings. In addition, it was significant that the contractor fully performed according to the oral agreements and the owners accepted the benefits of those agreements. "If [the owners] are allowed to retain the value of the benefits bestowed by [the contractor] without compensating him, they will be unjustly enriched." (*Asdourian, supra*, at p. 293; see also *Davenport & Co. v. Spieker* (1988) 197 Cal.App.3d 566 [242 Cal.Rptr. 911] [contractor's noncompliance with § 7159 did not preclude recovery from owners, one of whom was experienced in real estate investment and development, where many informal changes and additions were made to contract].)

■ The Lipians argue the trial court erred by requiring them to prove the *Asdourian* exception does not apply. This was not error. A defendant who "advances an affirmative defense to the plaintiff's claims bears the burden of proof on the defense." (*Seltzer v. Barnes* (2010) 182 Cal.App.4th 953, 969 [106 Cal.Rptr.3d 290].) The Lipians assert that section 7159 is designed to protect inexperienced home improvement consumers like themselves who are unlike the sophisticated owners in the cases we have discussed. They acknowledge that they are well educated; Mark Lipian is a psychiatrist with an M.D. and a Ph.D. in psychology, and Mary Lipian has masters degrees in both education and clinical psychology. But they argue this background is not related to home improvement projects. Each has some experience with contracts. Mary Lipian negotiates rate increases with hospitals as part of her work with an insurance company and sometimes reviews contracts. Mark Lipian has entered into employment contracts and office leases, one of which included remodeling work paid for by the landlord. They argue they lacked training or experience in home construction or home improvement projects since they had never before been involved in a home improvement project. Their only involvement in the real estate business was as homeowners. Since their inexperience with home improvements distinguishes them from the homeowners in the *Asdourian* line of cases, the Lipians argue Hinerfeld should not be allowed to enforce the oral contract.

The Lipians recognize that in *Arya Group, Inc. v. Cher* (2000) 77 Cal.App.4th 610 [91 Cal.Rptr.2d 815] (*Arya*), the court held that a statute similar to section 7159 did not bar enforcement of an oral contract for construction of a single-family residence. Business and Professions Code section 7164, the statute applied in *Arya*, was intended to extend the protections of section 7159 to consumers who contract to construct a single-family residence. (*Arya*, at p. 614.) Like section 7159, section 7164 requires the contract to be in writing with specified notices and disclosures. Applying the analysis of *Asdourian*, the *Arya* court concluded that the owner was a highly sophisticated homeowner with previous experience in residential construction who was assisted by her lawyer in negotiating the oral agreements with the contractor. A substantial part of the work had been completed before the contractor was terminated and therefore failure to enforce the oral contract would have unjustly enriched the owner. (*Arya*, at pp. 615–616.)

In contrast, the Lipians argue that they did not have legal assistance in negotiating with Hinerfeld, that Hinerfeld did not explain that the contract had to be in writing despite his extensive experience in construction, and that they were not involved in the day-to-day construction activities, having only visited the site occasionally.

Hinerfeld argues the enforcement of an oral home improvement contract depends on the particular facts of the case and whether the circumstances for enforcement are "compelling" under *Asdourian, supra*, 38 Cal.3d at page 292. That analysis, it contends, does not turn solely on whether the owner is "sophisticated" in terms of experience in real estate development or home improvements. Instead, Hinerfeld argues, the question is whether the owners fall within the class of homeowners the Legislature sought to protect in enacting section 7159.

■ We agree with Hinerfeld that the construction of section 7159 urged by the Lipians is too narrow. As we have discussed, the sophistication of the parties in construction matters is only one of several factors considered by the *Asdourian* court and its progeny. While the Lipians were not experienced in home improvements, as Hinerfeld puts it, "this project was not a 'run of the mill' home remodel, and . . . the Lipians were . . . not the typical homeowner."

Unlike the typical home improvement project, this project was a complex, high-end remodel on which the design continued to evolve over the years of planning and construction. The architect, Folonis, in conjunction with the Lipians, made repeated changes to the design. He described this as a unique project. The first general contractor was replaced because he was uncomfortable with continuing design changes made by Folonis. When Hinerfeld left in

the fall of 2006, six years after design of the project began, the work on the main house was only 30 percent complete.

Another factor indicating the Lipians are not the type of homeowners who come within section 7159, is Folonis's extensive involvement in the project as the "owners' representative." This entailed representing the Lipians on the site through periodic visitations, coordinating with the general contractor, answering questions by the general contractor and subcontractors, and reviewing requests for payments. He coordinated consultants retained by the Lipians. While Folonis did not have a part in the negotiation of the contract with Hinerfeld, he reviewed and approved Hinerfeld's applications for payment. Thus, the Lipians had an advocate on the project who was skilled in construction issues.

Finally, as in *Asdourian*, *Calwood*, and *Arya*, the Lipians would be unjustly enriched if Hinerfeld is not allowed recovery. Although the work on the project was not complete when Hinerfeld was terminated, the jury expressly found that the value of the services it rendered was $820,000, that the Lipians had not paid that amount, and that the damages for the Lipians' breach of contract were in excess of $202,000. In contrast, on the Lipians' cross-complaint, only $1,000 in damages were awarded.

██ We agree with the trial court that this is a compelling case warranting enforcement of the oral home improvement contract under the *Asdourian, supra*, 38 Cal.3d 276, line of authority.

## II

The Lipians argue that Hinerfeld was not entitled to an award of attorney fees for prevailing on the cause of action under Civil Code section 3260.1 (section 3260.1), a statute governing withholding of progress payments on a construction contract. Their first argument is that section 3260.1 does not apply because the oral contract was unenforceable. In light of our conclusion that the oral contract was enforceable, this argument fails. Alternatively, the Lipians argue that even if the oral contract was enforceable, the governing statute does not authorize a fee award.

"The normal standard of review for a challenge to the attorney fees award is abuse of discretion, but ' "de novo review of such a trial court order is warranted where the determination of whether the criteria for an award of attorney fees and costs in this context have been satisfied amounts to statutory construction and a question of law." ' [Citation.]" (*Yassin v. Solis* (2010) 184 Cal.App.4th 524, 530 [108 Cal.Rptr.3d 854] (*Yassin*).)

■ "Our fundamental task in interpreting a statute is to determine the Legislature's intent so as to effectuate the law's purpose. We first examine the statutory language, giving it a plain and commonsense meaning. We do not examine that language in isolation, but in the context of the statutory framework as a whole in order to determine its scope and purpose and to harmonize the various parts of the enactment. If the language is clear, courts must generally follow its plain meaning unless a literal interpretation would result in absurd consequences the Legislature did not intend. If the statutory language permits more than one reasonable interpretation, courts may consider other aids, such as the statute's purpose, legislative history, and public policy. [Citations.]" (*Coalition of Concerned Communities, Inc. v. City of Los Angeles* (2004) 34 Cal.4th 733, 737 [21 Cal.Rptr.3d 676, 101 P.3d 563].)

Section 3260.1, subdivision (b) provides, "Except as otherwise agreed in writing, the owner shall pay to the contractor, within 30 days following receipt of a demand for payment in accordance with the contract, any progress payment due thereunder as to which there is no good faith dispute between the parties. In the event of a dispute between the owner and the contractor, the owner may withhold from the progress payment an amount not to exceed 150 percent of the disputed amount. If any amount is wrongfully withheld in violation of this subdivision, the contractor shall be entitled to the *penalty* specified in subdivision (g) of Section 3260." (Italics added.)

The incorporated statute, Civil Code section 3260 (section 3260), does not use the term "penalty." It requires the owner or general contractor to make prompt payment of retention fees withheld by the owner on completion of the project. (§ 3260, subds. (b), (c), (d).) Subdivision (g) of that statute provides: "In the event that retention payments are not made within the time periods required by this section, the owner or original contractor withholding the unpaid amounts shall be subject to a charge of 2 percent per month on the improperly withheld amount, in lieu of any interest otherwise due. Additionally, in any action for the collection of funds wrongfully withheld, the prevailing party shall be entitled to his or her attorney's fees and costs." (§ 3260, subd. (g).)

In its special verdict, the jury found that the Lipians withheld an amount exceeding 150 percent of the disputed amount from progress payments to Hinerfeld. This finding established a violation of section 3260.1. On motion by Hinerfeld following the verdict, under section 3260.1, the trial court ordered the Lipians to pay a total of $200,000 in attorney fees to two law firms which represented Hinerfeld.

The Lipians and Hinerfeld urge conflicting interpretations of section 3260.1, subdivision (b). The Lipians' argument is that unlike the 2 percent monthly

charge in section 3260, subdivision (g), an award of attorney fees is not a "penalty" under that statute and therefore is not authorized by section 3260.1.

Section 3260.1, subdivision (b) refers to "the penalty" in the singular. Because section 3260, subdivision (g) includes both a 2 percent charge and attorney fees, the Lipians reason that the Legislature did not intend to incorporate both in section 3260.1. Had it so intended, it would have used the plural "penalties."

In a related argument, the Lipians contend: "[T]he monthly 2% charge in section 3260, subdivision (g), is indisputably a penalty, and therefore must be 'the penalty' referenced in section 3260.1, subdivision (b)." Citing authority that a characteristic feature of a penalty is the lack of proportional relation to damages, the Lipians argue that the monthly 2 percent charge (they characterize it as a 24 percent annual charge) far exceeds the normal cost of borrowing money. They assert that the provision is therefore not intended to make the contractor whole, but to punish the owner for having withheld progress payments. They make a similar argument with respect to the 2 percent monthly charge "in lieu of interest" claiming that it "is not 'interest' in the usual sense of [the] word, but a penalty."

The Lipians argue that while the monthly charge may be a penalty, and hence recoverable under section 3260.1, an award of attorney fees is not. They contend it is, instead, compensation to the prevailing party for successfully litigating the right to progress payments. This also is shown by the fact that fees may be assessed in favor of the "prevailing" party, whether that party is the owner or the contractor. The Lipians point out that other prompt payment statutes describe 2 percent monthly charges for late payments as penalties and provide for attorney fees in a separate sentence that does not use that designation. (Pub. Contract Code, § 10262.5, subd. (a); Bus. & Prof. Code, § 7108.5.)

Hinerfeld argues that section 3260.1 is ambiguous as to whether the term "penalty" is intended to include both the 2 percent charge and attorney fees under section 3260, subdivision (g) as remedies. It identifies a number of problems with the construction urged by the Lipians: section 3260, subdivision (g) does not use the term "penalty" as does section 3260.1; the provision for attorney fees in section 3260, subdivision (g) begins with the word "Additionally"; and section 3260, subdivision (g) limits the 2 percent charge to retention fees rather than progress payments, but the provision on attorney fees in the same subdivision allows fees in any action " 'for the collection of funds wrongfully withheld.' " In addition, Hinerfeld points out that while the Lipians now claim that attorney fees are not authorized by section 3260.1, subdivision (b), they sought such an award in the trial court.

As we have seen, section 3260.1, subdivision (b) provides for recovery of the "penalty" specified in section 3260, subdivision (g), but that statute does not use the term "penalty." In contrast, other prompt pay statutes cited by the parties expressly characterize a monthly charge imposed on withheld amounts as a "penalty."[3] The characterization of the monthly 2 percent charge in section 3260, subdivision (g) as "in lieu of interest" rather than as a "penalty" reflects a legislative choice to distinguish that statute from other prompt pay statutes. Had the Legislature employed the term "penalty" in section 3260, subdivision (g) to describe the 2 percent charge, the statute would be not be ambiguous and no resort to other interpretive aids would have been required.

■ Neither of the remedies provided in section 3260, subdivision (g) is within the ordinary use of the term "penalty." "Civil penalties are imposed 'as a means of securing obedience' to statutes and regulations validly adopted under the police power. [Citation.] They are punitive in character. [Citations.] Civil penalties may be imposed without regard to actual damage that may have been sustained. [Citation.] Indeed, a 'characteristic feature of a penalty is its lack of proportional relation to [actual] damages . . . .' [Citation.]" (*People v. Union Pacific Railroad Co.* (2006) 141 Cal.App.4th 1228, 1257–1258 [47 Cal.Rptr.3d 92].) "Civil penalties are inherently regulatory, not remedial. [Citations.]" (*Id.* at p. 1258.) In contrast to the type of penalty described in *People v. Union Pacific Railroad Co., supra*, 141 Cal.App.4th at pages 1257–1258, section 3260, subdivision (g) describes the 2 percent monthly charge as "in lieu of any interest otherwise due."

Statutory attorney fees under section 3260, subdivision (g) also do not fit within the common meaning of "penalty." "Fee-shifting statutes generally are intended to enable parties to retain attorneys to represent them in certain types of cases. The goal of those statutes is 'to enable private parties to obtain legal help in seeking redress for injuries resulting from the actual or threatened violation of specific . . . laws. Hence, if plaintiffs . . . find it possible to engage a lawyer based on the statutory assurance that he [or she] will be paid a "reasonable fee," the purpose behind the fee-shifting statute has been satisfied.' (*Pennsylvania v. Del. Valley Citizens' Council* (1986) 478 U.S.

---

[3] See Business and Professions Code section 7108.5 (payment to subcontractor, 2 percent monthly "penalty" plus attorney fees and costs); Business and Professions Code section 7108.6 (licensed contractor's payment of transportation charges to dump truck motor carrier, "penalty" of 2 percent a month plus fees and costs); Civil Code section 3262.5 (payments to subcontractors in contract with public utility, 2 percent monthly "penalty" plus fees and costs); Civil Code section 3320 (progress and retention payments to prime design professional on public work contract, "penalty" of 1.5 percent monthly plus fees and costs to prevailing party); Civil Code section 3321 (payments by prime design professional to subconsultant design professionals in public works contract, "penalty" of 1.5 percent monthly plus fees and costs); Civil Code section 3322 (payments by broker of construction trucking services to dump truck equipment motor carriers, 2 percent monthly "penalty" plus fees and costs).

546, 565 [92 L.Ed.2d 439, 106 S.Ct. 3088].)" (*Marron v. Superior Court* (2003) 108 Cal.App.4th 1049, 1065 [134 Cal.Rptr.2d 358].)

■ The statute is ambiguous as to the extent of remedy provided and, based on the language alone, reasonable arguments may be made for both positions. Where, as here, a statute is susceptible of more than one reasonable construction it is "appropriate to turn to extrinsic aids, including the legislative history of the measure, to ascertain its meaning. [Citation.]" (*Diamond Multimedia Systems, Inc. v. Superior Court* (1999) 19 Cal.4th 1036, 1055 [80 Cal.Rptr.2d 828, 968 P.2d 539].)

We granted Hinerfeld's motion for judicial notice of the legislative history of Civil Code section 3260.1, as contained in Assembly Bill No. 1608 (1991–1992 Reg. Sess.) enacted as chapter 368 of Statutes 1991. That history demonstrates a consistent legislative intent that both the 2 percent charge and attorney fees would be available under section 3260.1 in cases involving a homeowner's late progress payments to a contractor. The staff analysis of Assembly Bill No. 1608 (1991–1992 Reg. Sess.) for the Assembly Committee on Consumer Protection, Governmental Efficiency and Economic Development in May 1991 noted that while existing law provided for an award of 2 percent per month and attorney fees to the prevailing party for retention payments withheld (§ 3260, subd. (g)), "<u>This bill</u> would provide that for private works of improvement the owner shall pay to the prime contractor the amount of <u>progress payments</u> due within 30 days following receipt of a demand for payment. *The penalty for nonpayment is 2% per month of the wrongfully held amount plus attorney's fees and costs.*" (Assem. Com. on Consumer Protection, Governmental Efficiency and Economic Development, Rep. on Assem. Bill No. 1608 (1991–1992 Reg. Sess.) as amended May 15, 1991, p. 1, italics added.)

An analysis of Assembly Bill No. 1608 (1991–1992 Reg. Sess.) prepared for the Senate Rules Committee by the Office of Senate Floor Analyses is similar. It also states that attorney fees would be available under section 3260.1: "If a collection action is required, the prevailing party would be entitled to his or her attorney's fees and costs." The same language appears in the analysis prepared for the Senate Committee on Judiciary in July 1991. (Sen. Com. on Judiciary, Report on Assem. Bill No. 1608 (1991–1992 Reg. Sess.) as amended May 15, 1991, p. 2.) Neither party has cited, nor have we found, legislative history to the contrary.

■ We are persuaded by this history that by allowing a contractor to recover the "penalty" provided in section 3260, subdivision (g) in an action under section 3260.1, the Legislature intended to authorize both the 2 percent charge in lieu of interest and attorney fees to the prevailing party. ■ As

our Supreme Court pointed out in a recent case, *People v. Indiana Lumbermens Mutual Ins. Co.* (2010) 49 Cal.4th 301 [110 Cal.Rptr.3d 4, 231 P.3d 909], despite the "natural" construction of a statute suggested by its language, legislative history can demonstrate that the Legislature intended a different construction, and that construction will be given effect. (*Id.* at pp. 308–312.)

In their reply brief, the Lipians cite *Yassin, supra*, 184 Cal.App.4th 524, for the proposition that attorney fees are not authorized by section 3260.1, subdivision (b). In *Yassin*, the trial court awarded fees under section 3260, subdivision (g) but "expressly did not impose a penalty or award fees under section 3260.1." (*Yassin*, at p. 533.) The Court of Appeal held that the final payment due at the completion of a construction project was not a retention payment within the meaning of section 3260, and therefore the prevailing party in the action was not entitled to an award of fees under that statute. (*Yassin*, at p. 538.)

The *Yassin* court said in dicta: "As the trial court noted, section 3260.1 did not authorize an award of attorney fees. (See *Murray's Iron Works, Inc. v. Boyce* [(2008)] 158 Cal.App.4th [1279,] 1299, fn. 14 [71 Cal.Rptr.3d 317] ['By this we do not express a view that Civil Code section 3260.1 supports an award of attorney fees even in a dispute over a contractually agreed progress payment. (See *Denver D. Darling*[*, Inc. v. Controlled Environments Construction, Inc.* (2001)] 89 Cal.App.4th [1221,] 1241 [108 Cal.Rptr.2d 213] [implicitly distinguishing between the Civ. Code[,] § 3260 2 percent "penalty" provision and the attorney fees provision of subd. (g)].)']; see also *McAndrew v. Hazegh* (2005) 128 Cal.App.4th 1563, 1566 [27 Cal.Rptr.3d 836] ['the 2 percent penalty or attorney fees . . . under section 3260, subdivision (g)']; cf. *Morton Engineering & Construction, Inc. v. Patscheck* (2001) 87 Cal.App.4th 712, 717 [104 Cal.Rptr.2d 815] [with respect to a prevailing party clause, '[a] provision that has equal application to both parties is not a sanction against one of the parties'].)" (*Yassin, supra*, 184 Cal.App.4th at p. 533.)

Dicta is not controlling on the issue we address here. (*People v. Griffin* (2004) 33 Cal.4th 1015, 1028, fn. 4 [16 Cal.Rptr.3d 891, 94 P.3d 1089] [mention of issue in prior Supreme Court case was dicta and not controlling on the point of law decided].) In the first case cited by the *Yassin* court, *Murray's Iron Works, Inc. v. Boyce, supra*, 158 Cal.App.4th 1279, the issue was the meaning of "progress payment" under section 3260.1. The court concluded that there was no evidence of a wrongfully withheld progress payment, and therefore the court erred in awarding attorney fees under that section. (*Murray's Iron Works, Inc.*, at p. 1299.) In a footnote, the court explained: "By this we do not express a view that Civil Code section 3260.1

supports an award of attorney fees even in a dispute over a contractually agreed progress payment. (See *Denver D. Darling,* [*Inc. v. Controlled Environments Construction, Inc.,*] *supra,* 89 Cal.App.4th at p. 1241 [implicitly distinguishing between the Civ. Code, § 3260 2 percent 'penalty' provision and the attorney fees provision of subd. (g)].)" (*Id.* at p. 1299, fn. 14.)

■■■ " 'It is elementary that the language used in any opinion is to be understood in the light of the facts and the issue then before the court. [Citation.] Further, cases are not authority for propositions not considered. [Citation.]' (*McDowell & Craig v. City of Santa Fe Springs* (1960) 54 Cal.2d 33, 38 [4 Cal.Rptr. 176, 351 P.2d 344].)" (*Cicairos v. Summit Logistics, Inc.* (2005) 133 Cal.App.4th 949, 957 [35 Cal.Rptr.3d 243].) As we read footnote 14 in *Murray's Iron Works, Inc. v. Boyce, supra,* 158 Cal.App.4th at page 1299, the court did not decide one way or another whether fees were available under section 3260.1.

Two of the other cases cited by the *Yassin* court describe the section 3260, subdivision (g) 2 percent charge as a "penalty" but neither examined whether attorney fees available under that subdivision constitute a "penalty" within the meaning of section 3260.1, subdivision (b), a statute not cited in either case. The description of the 2 percent charge as a "penalty," a term which does not appear in section 3260, subdivision (g), was not supported by analysis in either opinion. In *McAndrew v. Hazegh, supra,* 128 Cal.App.4th at page 1566, the issue was whether the action involved a " 'retention' " payment to bring it within section 3260. The court concluded that it did not and that the remedies in section 3260, subdivision (g) did not apply. (128 Cal.App.4th at p. 1567.)

*Denver D. Darling, Inc. v. Controlled Environments Construction, Inc., supra,* 89 Cal.App.4th at page 1241, cited in *Murray's Iron Works, Inc. v. Boyce, supra,* 158 Cal.App.4th at page 1299, footnote 14, involved a number of issues under section 3260, none of which addressed whether only the 2 percent charge under section 3260, subdivision (g) is a "penalty" within the meaning of section 3260.1, subdivision (b). The court concluded that attorney fees are not available under section 3260 where there is a bona fide dispute over withheld retention payments. (*Denver D. Darling,* at p. 1241.) The appellate court also held that the owner withheld more than 150 percent of retention payments in violation of section 3260. It remanded the matter to the trial court for a determination of the contractor's entitlement to attorney fees under section 3260, subdivision (g) as prevailing party. (*Denver D. Darling, Inc.,* at p. 1242.)

These cases demonstrate the ambiguity of the use of the term "penalty" in section 3260.1, subdivision (b) in incorporating the dual remedies of section

3260, subdivision (g). This lends support to our determination that resort to the legislative history is necessary in order to determine whether the Legislature intended attorney fees to be available under section 3260.1, subdivision (b). As we have discussed, the legislative history of section 3260.1 demonstrates a legislative intent that both the monthly 2 percent charge and reasonable attorney fees are available to a party prevailing on an action under that statute. As the prevailing party, Hinerfeld was entitled to an award of fees under section 3260.1.

III*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## DISPOSITION

The judgment is affirmed. Respondent to have its costs on appeal.

Willhite, J., and Suzukawa, J., concurred.

---

*See footnote, *ante*, page 86.