Filed 11/5/13

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

|  |  |
|---|---|
| EEL RIVER DISPOSAL AND RESOURCE RECOVERY, INC.,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>COUNTY OF HUMBOLDT,<br><br>    Defendant and Respondent. | A135744<br><br>(Humboldt County<br>Super. Ct. No. CV110352) |

Appellant Eel River Disposal and Resources Recovery Inc., the lowest bidder on an exclusive franchise to collect and dispose of solid waste, seeks to compel Humboldt County (the County), by writ of mandate, to vacate its award of the franchise to real party in interest, Tom's Trash. Appellant contends the award was unlawful because bids were not evaluated pursuant to the "lowest responsible bidder" requirement implicit in the phrase "competitive bidding" as used in the governing county ordinance and related statutes. Rejecting that argument, the trial court denied relief. We shall reverse the ruling.

**FACTS AND PROCEEDINGS BELOW**

In 2008, the County enacted Ordinance 2063, which amended Section 521-6, subdivision (a)(1) and (2), of the Humboldt County Code (Humboldt Code section 521-6), pertaining to the granting of franchises and permits for the right to collect solid waste or source-separated materials within the County. Humboldt Code section 521-6,

1

subdivision (a)(1) and (2), which is set forth in its entirety in the margin below,[1] provides that the Board "may grant partially or wholly exclusive franchises, with or without competitive bidding," but that "[b]efore granting an exclusive franchise without competitive bidding, the Board shall make specific findings as to why the public health, safety and well-being are best served by proceeding without competitive bidding."

Since 1973, the County had awarded an exclusive franchise to collect solid waste in the Willow Creek area to Tom's Trash. However, on September 21, 2010, after determining that the company was delinquent in remitting franchise fees and otherwise not in compliance with the terms of its contract with the County, the Board refused to extend Tom Trash's contract, which expired on December 31, 2010. On September 21, 2010, the Board directed the Public Works Department (PWD) "to competitively bid a new solid waste franchise in the Willow Creek Area."

Because the process of soliciting and evaluating bids for such a franchise was expected to take several months, and in order to provide for continuous solid waste collection and disposal in the Willow Creek area during that period, the Board approved

---

[1] **"SEC. 521-6.** GRANTING OF FRANCHISES AND PERMITS.

"(a) The Board may grant any permit or franchise or enter into any contract with any person, for the right and privilege of collecting solid waste or source-separated materials within the County or any portion thereof, or district, to be fixed by the Board upon such terms and conditions, consistent with this chapter and the Public Resources Code of the State of California, as the Board may deem for the best interests of the County, for such period of time as the Board deems advisable, but not to exceed twenty (20) years.

"(1) If, in the opinion of the Board, the public health, safety, and well-being so require, the Board may grant partially or wholly exclusive franchises, either with or without competitive bidding.

"(2) The grant of exclusive franchises shall require that the Board of Supervisors call and hold a public hearing, for which hearing publication of notice shall be made by the Board of Supervisors pursuant to Section 6066 of the Government Code. Before granting an exclusive franchise without competitive bidding, the Board shall make specific findings as to why the public health, safety and well-being are best served by proceeding without competitive bidding." (Humboldt Code section 521-6.)

As noted, *post,* at pages 8 and 9, footnote 4, much of the foregoing language tracks that of Public Resources Code section 40059, though the two provisions are not entirely consistent.

entering into a "short-term" or interim franchise on the basis of competitive bids. After the solicitation by the PWD of such bids, the Board granted the six-month interim franchise to appellant. The interim franchise expired on June 30, 2011.

The legal confusion in this case began with two reports to the Board from the Director of the PWD recommending that the Board take specified actions necessary to solicit and evaluate bids for a new long-term franchise. The first report, dated March 3, 2011, recommended that at its next meeting on March 22 the Board authorize the PWD to issue a request for proposal (RFP) for an exclusive franchise for a service period of 10 years commencing July 1, 2011, with the possibility of a five-year extension. The report stated that proposals "will be evaluated based on a number of factors," specifically including "responsiveness to the RFP, company qualifications and comparable experience, financial creditworthiness, acceptance of the franchise terms, and the company's proposed management plan. Service rates will receive a factor of 65% in the evaluation criteria." The report went on to explain that "[b]ecause the evaluation considers criteria beyond strictly pricing, the process is not then a 'competitive bid,' and certain findings in accordance with Humboldt Code section 521-6[, subdivision] (a)(2) will need to be made at a public hearing noticed in accordance with Government Code Section 6066 before the exclusive franchise can be granted."

Finally, the March 3 report stated that the findings required by subdivision (a)(2) of Humboldt Code section 521-6—namely, "why the public health, safety and well being are best served by proceeding without competitive bidding" —were "appropriate, and recommended" because "the proper collection and disposal of solid waste has environmental, health and safety consequences for residents of this county and, as such, should only be performed by a firm that has demonstrated experience, capability and capacity to handle such a responsibility." The Board never made the findings required by Humboldt Code section 521-6, subdivision (a)(2), in order to proceed "without competitive bidding" because it ultimately decided to employ a competitive bidding process.

3

The RFP for an exclusive franchise for the collection of solid waste in the Willow Creek area was approved by the Board on March 22, identified six criteria to be considered by the review committee, specified the weight to be given each criterion, and stated that the scoring of individual bids "will reflect the extent to which the criteria are fulfilled relative to other proposals." The criteria and corresponding weights assigned to each are as follows: "Responsiveness to RFP 5%; [¶] Company qualifications and comparable experience 10%; [¶] Financial creditworthiness 5%; [¶] Acceptance of RFP and franchise terms (evaluation of exceptions) 5%; [¶] Evaluation of management plan 10%; [¶] [and] Service rates 65%."

The second report from the Director of the PWD, which was made on May 13, 2011, after the sealed bids were opened, informed the Board that the four proposals received by the review committee had been evaluated and scored, and appellant had received the highest total score on the criteria listed in the RFP. On that basis, the report recommended that at its next meeting on May 24 the Board award appellant the 10-year exclusive franchise.

The Director's May 13 report also addressed the statements in his March 3 report that, because the process of evaluating bids "considers criteria beyond strictly pricing," it is not "competitive bidding," and therefore the findings required by Humboldt Code section 521-6, subdivision (a)(2), would need to be made at a noticed public hearing. The Director stated that his earlier statement "directly contradicts the intent of Section 521-6(a)(2) and staff is returning to the Board to clarify and correct that statement. The RFP process used by the department for this exclusive franchise *was a competitive bid as detailed below. Consequently, findings are not necessary*." (Italics added.) The process employed was "competitive bidding," the Director explained, because the evaluation of the four proposals by the review committee "was based on a number of factors including responsiveness to the RFP, company qualifications and comparable experience, financial creditworthiness, acceptance of the franchise terms, and the company's proposed management plan . . . [and] [s]ervice rates received a factor of 65% in the evaluation criteria."

4

The May 13 report stated that appellant proposed the lowest service rate, the criterion weighted most heavily, and scored highest or tied for highest on each of the five other criteria, although the scores were very close. Blue Lake Garbage's score was second, and Humboldt Sanitation & Recycling Co. and Tom's Trash tied for last.

Finally, under the heading "ALTERNATIVES TO STAFF RECOMMENDATIONS," the May 13 report stated: "The Board could [at its May 24 hearing] choose not to award the exclusive franchise to Eel River Disposal and Resource Recovery, Inc. If the Board so chooses, they [*sic*] can evaluate the proposals on the same basis as the evaluation criteria outlined in the RFP and award the exclusive franchise to one of the other companies."

A day or two before the May 24 Board meeting, Supervisor Ryan Sundberg, whose district included the Willow Creek area, distributed packets to other members of the Board containing 14 letters from residents of his district supporting award of the franchise to Tom's Trash.

At the commencement of the Board hearing on award of the franchise, the Director made the case for awarding the franchise to appellant, emphasizing that in the minds of the three members of the review committee (himself and two other employees of the PWD) the company "hit all the buttons." It not only " scored 100% on the evaluated criteria identified in the RFP," but also offered "the lowest cost to the community and a reasonable cost for adding curb-side recycling availability to the community and even with the curb-side recycling, they are still the lowest cost provider."

Supervisor Sundberg then moved to award the franchise to Tom's Trash. The motion was seconded, and the Board heard brief statements from the owner and an employee of Tom's Trash and several residents of the Willow Creek area urging award of the franchise to Tom's Trash, and the owner and an employee of appellant urging award of the franchise to appellant. The gravamen of the testimony in favor of Tom's Trash was that its earlier loss of the franchise for failure to remit franchise fees resulted from the negligence and criminal conduct of a former bookkeeper and this was no longer a problem, residents of the Willow Creek area had long had and still wanted a locally-based service provider who knew customers personally and employed local residents,

5

residents were very satisfied with the service provided by Tom's Trash, and that the service provided by appellant during the interim period in which it served the area was deficient in several ways. The owner and operations manager of appellant testified that the company was based in Humboldt County and had for 27 years provided residents of towns in the county "impeccable service," had "never heard" the "allegations" made at the hearing or received any complaints; it also provided certain free services for residents, and would continue to respond positively for requests for special assistance from seniors and others in need.

At the close of testimony, County Counsel pointed out that the purpose of the noticed hearing was to vote on the six "recommendations" made to the Board by the Director. [2] Because the purpose of Supervisor Sundberg's motion was to reject the Director's third recommendation to award the franchise to appellant, and award it instead to Tom's Trash, County Counsel suggested the motion be amended to clarify this intention. She also suggested that recommendations four, five and six should also be modified to effectuate the intention to reject the Director's proposal to award the

---

[2] The Director's six recommendations to the Board were as follows:

"1. Open a public hearing and receive the staff report and public comments on the proposed awarding of exclusive franchise agreement for the Willow Creek Area to Eel River Disposal and Resource Recovery, Inc. for the period July 1, 2011 to June 30, 2021 and to establish a rate schedule for the Willow Creek Area.

"2. Close the public hearing.

"3. Award the exclusive franchise to Eel River Disposal and Resource Recovery, Inc. for obtaining the highest percentage score after evaluation of proposal by the review committee.

"4. Approve proposed rate adjustments for services.

"5. Authorize the Chair to sign the Notice of Award/Certificate of Acceptance . . . and direct the Public Works Department to require the Eel River Disposal and Resource Recovery to execute the Certificate of Acceptance of Contract within two weeks following the granting of the franchise.

"6. Delegate authority to the Public Works Director to execute an exclusive franchise agreement with the approved rate and on the terms and conditions set forth in the franchise agreement . . . with the Eel River Disposal and Resource Recovery, Inc. upon approval of the agreement by County Counsel and review and approval of insurance certificates by Risk Manager.". . . .

exclusive franchise to appellant and award it instead to Tom's Trash. County Counsel recommended that the motion also be amended to include a statement that the Board has evaluated the criteria outlined in the RFP and finds it is "in the best interests of the County to award the exclusive franchise to Tom's Trash." At the June 27 hearing in the Humboldt County Superior Court, county counsel explained the gist of the foregoing suggestions: "Look[,] if you are going to award it to Tom's Trash, include in the motion that you've evaluated the criterion [*sic*], you find it is in the best interest of the County. And also recommendations four, five and six on the Board report, you do have to put Tom's [Trash] in instead of [appellant][;] otherwise the Board would have awarded it to Tom's [Trash] and told the chair and the public works director to go ahead and sign the contract with [appellant]."

Supervisor Sundberg, and Supervisor Clendenen, who seconded the motion, agreed to the modifications suggested by county counsel, and the motion passed by a vote of 4-to-1.

Although Supervisor Sundberg's motion was orally amended by the statement that that the Board had evaluated the criteria outlined in the RFP and found that award of the franchise to Tom's Trash was in the best interests of the County, the Board made no changes in the PWD review committee's scoring of bidders relative to the criteria specified in the Board-approved RFP. The County admits that, as alleged in the petition, a "substantial reason" for awarding the exclusive franchise to Tom's Trash "was that Tom's was a local employer in Willow Creek and that [appellant] was not." The four supervisors who voted to pass Supervisor Sundberg's motion at the May 24, 2011 hearing all indicated the view that local ownership of Tom's Trash and its employment of several local residents outweighed the fact it was not the lowest bidder, and this was the chief reason they voted for the motion.

On June 8, 2011, appellant filed a verified petition for writ of mandate and complaint for declaratory relief (Code Civ. Proc., §§ 1085, 1060) in the superior court seeking a peremptory writ mandating that the County (1) award the exclusive franchise at issue "to the entity scoring the highest under the criteria under the RFP process in the

7

competitive process established [by Humboldt Code section 521-6]" and (2) "immediately vacate its vote awarding the [franchise] to Tom's Trash, an entity which did not receive the highest score in the competitive bid RFP process." The complaint alleged that, having elected to proceed by a competitive bid process, Humboldt Code section 521-6 imposed upon it a legal duty to award the exclusive franchise to the lowest responsible bidder, and the County represented that it would discharge that duty pursuant to the process and evaluative criteria set forth in the RFP. The complaint sought a declaration to that effect under Code of Civil Procedure section 526, subdivision (a), as well as a declaration that the vote awarding the franchise to Tom's Trash, taken after not complying with the competitive bidding process mandated by Humboldt code section 521-6 and specified in the RFP, was "null and void." Finally, the complaint sought recovery of costs and reasonable attorney fees incurred in the action, and such other relief as the court deemed just and proper.

On April 18, 2012, after conducting a hearing, the superior court issued a nine-page order denying appellant's request for writ of mandate and declaratory relief. On May 3, 2012, the court entered judgment denying the relief sought by appellant and awarding costs to the County.

Timely notice of this appeal was filed on June 15, 2012.

## THE TRIAL COURT RULING

In large measure, the language of Humboldt Code section 521-6 (set forth, *ante*, at p. 2, fn. 1) tracks that in Public Resources Code section 40059, a provision of the Integrated Waste Management Act of 1989 (§§ 40050-49620) (the 1989 Act).[3] As material, section 40059 authorizes a Board of Supervisors, upon a finding that that "the public health, safety or well-being so require," to grant a "partially exclusive or wholly exclusive franchise . . . either with or without competitive bidding."[4] Like the county

---

[3] All untitled section references are to the Public Resources Code.

[4] Despite the similarities between Humboldt Code section 521-6 and section 40059, the two measures are different in one significant respect. Unlike Humboldt Code section 521-6, section 40059 does not require a county wishing to proceed without

8

ordinance, section 40059 uses the phrase "competitive bidding" but does not explicitly indicate whether the phrase embodies a "lowest responsible bidder" requirement, as appellant maintains.

The trial court appears to have accepted, as we do, that a "responsible bidder" "means a bidder who has demonstrated the attribute of trustworthiness, as well as quality, fitness capacity, and experience to satisfactorily perform the public works contract." (Pub. Contract Code, § 1103 [codifying language in *City of Inglewood-L.A. County Civic Center Auth. V. Superior Court* (1972) 7 Cal.3d 861, 867) (*City of Inglewood*)]; see also *Great West Contractors, Inc. v. Irvine Unified School Dist.* (2010) 187 Cal.App.4th 1425, 1450-1452; *Taylor Bus Service, Inc. v. San Diego Bd. of Education* (1987) 195 Cal.App.3d 1331, 1341-1343; American Bar Association (ABA), Section of Public Contract Law, Model Procurement Code for State and Local Governments (2000), § 3-101 [a responsible bidder possesses "the capability in all respects of bidders to perform fully the contract requirements, and the integrity and reliability which will assure good faith performance"]; 10 McQuillin, Municipal Corporations (3d rev. ed. 2009) § 29:81, at pp. 644-656.) Thus, the "lowest responsible bidder requirement" imposes on governmental agencies that solicit bids for public contracts a duty to evaluate bidders' possession of such attributes in a reasonable way on the basis of specified criteria timely made known to bidders and the general public. The lowest bidder is not necessarily the lowest *responsible* bidder. (*City of Inglewood, supra*, 7 Cal.3d at p. 867.)

The trial court first addressed appellant's contention that the "lowest responsible bidder" requirement was compelled by sections 49200 and 49201, provisions of the 1989

competitive bidding to make findings "as to why the public health, safety and well-being" are best served by doing so. The statute requires such findings only if the governmental agency wishes to grant a franchise or contract *that is partially or wholly exclusive*, regardless whether a competitive bidding process is employed. Perhaps understandably, because section 40059 is badly drafted and somewhat confusing, the drafters of Humboldt Code section 521-6 seem to have misconstrued the statute. This assumption is supported by the fact that, although the franchise the County put out to bid in this case was wholly exclusive, the Board never made the findings required in order to do that. We do not pursue this issue because appellant has never raised it.

9

Act prescribing the process for awarding franchises for solid waste handling services. Section 49200 provides that a board of supervisors may grant such a franchise "only under the terms and conditions of this chapter." Section 49201, which is most pertinent, provides, among other things, that "[u]pon examination by the board of supervisors of the bids, the franchise may be awarded to the lowest *qualified* bidder." ( 49201, subd. (c), italics added.)

The trial court acknowledged that the phrase "lowest qualified bidder" in section 49201 imposed a "lowest responsible bidder" requirement. It found, however, that this statute conflicts with section 40059, which does not use the word "responsible" or "qualified" and, in the court's view, "clearly allows [the County] to make the award to someone other than the lowest responsible bidder." As we later discuss, the court concluded that, because section 40059 commences with the phrase "Notwithstanding any other provision of law," it prevails when its application conflicts with section 49201 (see 79 Ops. Cal. Atty. Gen. 28, 33-34 (1996), 1996 WL 179823), which is here the case.

The court next rejected the argument that a "lowest responsible bidder" requirement arose from the fact that on September 21, 2010, the Board directed the PWD " 'to competitively bid a new solid waste collection franchise in the Willow Creek area.' " The court stated: "Unless one assumes that 'competitive bidding' necessarily entails a 'lowest responsible bidder' requirement . . . there is no evidence that the Board's direction to the PWD was intended to adopt that requirement. The evidence is that the Board was aware that competitive bidding would be achieved through a [RFP] process . . . but that evidence is of little help, since an RFP process could very well include or exclude a 'lowest responsible bidder' requirement."[5]

---

[5] The use by the County of an RFP seems curious. Most government contract procurement guidelines, and the law in many jurisdictions (see 10 McQuillin, Municipal Corporations, *supra*, § 29:33, at pp. 475-476), distinguish between the solicitation of "bids" and the solicitation of "proposals." For example, the State Contracting Manual instructs that an Invitation for Bids (IFB) "seeks an answer to the following: '*Here is exactly what we need to have done.* Here are the qualification requirements, performance specifications, time frames, and requirements that must be met. How much will you

10

The trial court relied heavily on the Board-approved RFP. The court was "persuaded that the Board must *not* have intended to direct the PWD to adopt a 'lowest responsible bidder' requirement, because the Board unquestionably approved the RFP prepared by the PWD that contained no such requirement." Apparently relying on a provision in the RFP stating that the County "reserves the right to modify this [evaluative] process in any way and at any time during the RFP and contractor selection process," the court agreed with the County's argument that "even if the Board had initially intended to limit itself to an award based solely on the lowest responsible bidder, the Board was free to change its mind by adopting an RFP omitting that requirement."

Turning to the question whether the "competitive bidding" referred to in Humboldt Code section 521-6, subdivision (a)(2), contemplates an award to the "lowest responsible bidder," the court dismissed the suggestion that "competitive bidding" as used in Section 521-6, subdivision (a)(2), should be defined by reference to Public Contract Code section 10180, which relates to the awarding of construction contracts by state agencies. Public Contract Code section 10180 provides that after opening sealed

---

charge us?'" (State Contracting Manual, ¶ 5.11 A.) On the other hand, "An RFP seeks an answer to the following: '*Here is what we wish to accomplish.* Here are the qualification requirements, performance specifications, time frames, and other requirements that must be met. How would you accomplish the job for us and for how much?'" (*Id*., § 5.15 A.) Similarly, the Model Procurement Code distinguishes between "Competitive Sealed Bidding" (§ 3-202), which is most commonly employed, and "Competitive Sealed Proposals" (§ 3-203), which is used when the appropriate procurement officer "determines in writing, pursuant to regulations, that the use of competitive sealed bidding is either not practicable or not advantageous to the [State]." Notwithstanding that use of an RFP indicates otherwise, we assume the solicitation in this case is for bids, not proposals, because the County is capable of completely defining the scope of work required. (See 10 McQuillin, Municipal Corporations, *supra,* § 29:33, at p. 475.) Ordinarily, the "lowest responsible bidder" requirement is applied to both solicitations for bids and for proposals. (See State Contracting Manual, § 5.07); ABA, Model Procurement Code for State and Local Governments, §§ 3-202(5), 3-203(7).) The RFP with which we are concerned appears to conform to that authorized by Public Contract Code section 10344, which pertains to state service contracts; county franchises for solid waste handling services are, however, governed by section 49201, which directs the county to "call for bids."

11

bids, the department shall "award the contracts to the lowest responsible bidder." The trial court refused to consider section 10180 of the Public Contract Code (or section 10344, subdivision (b)(3), of the same Code, which also directs that certain state contracts be awarded to the "lowest responsible bidder") as extrinsic evidence bearing upon the meaning of "competitive bidding" because those statutes do not purport to define "competitive bidding." (See also Pub. Contract Code, §§ 20128, 20162 [requiring counties and cities to award certain public contracts to "lowest responsible bidder"].)

Construing appellant's reliance on the Public Contract Code to include the idea that "competitive bidding" has a technical or legal meaning that should be applied in lieu of its ordinary meaning (see Code Civ. Proc., § 16; *Arnett v. Dal Cielo* (1996) 14 Cal.4th 4, 19 ["when a word used in a statute has a well-established *legal* meaning, it will be given that meaning in construing the statute"]), the court rejected the argument because in its view the phrase had no such technical or well-established legal meaning. After "considerable research," the court had been unable to find "any decision in which a court interpreted or defined the phrase 'competitive bidding' to include necessarily a 'lowest responsible bidder' requirement, unless that requirement was also separately stated in the statute." The court reasoned that if the Board intended subdivision (a)(2) of Humboldt Code section 521-6 to incorporate a "lowest responsible bidder" requirement, it "would have done so either explicitly or by incorporating an appropriate state statute" that was explicit.

In the end, the court concluded that the "common, ordinary meaning of "competitive bidding," as that phrase is used in both section 40059 and Humboldt Code section 521-6, "would be met by [the governmental agency] having solicited and evaluated a number of bids submitted in competition for the award of the Franchise," a standardless definition perceived by the court as relieving the Board of the need to comply with the requirements set forth in section 49201 or those enunciated in the RFP. Applying that interpretation of "competitive bidding," the trial court found "that the Board complied with the requirement of section 521-6(a)(2) that [it] utilize 'competitive

12

bidding' in the absence of 'specific findings as to why the public health, safety, and well-being are best served by proceeding without competitive bidding.' "

The court also rejected the contention that the award to Tom's Trash was unlawful because appellant was not treated "in a fair and equal manner." Citing *Cypress Security, LLC v. City and County of San Francisco* (2010) 184 Cal.App.4th 1003, 1010 (*Cypress Security*), the court stated that its review was limited to a determination whether the Board's actions were arbitrary, capricious, and entirely lacking in evidentiary support, or inconsistent with proper procedure, and that appellant had the burden of overcoming the presumption that the Board's actions were supported by substantial evidence. In finding the decision to award the franchise to Tom's Trash supported by substantial evidence, the court emphasized that the RFP "made it abundantly clear that (1) the recommendation of the review committee was not binding on the Board; (2) factors other than those listed in the RFP could be considered; and (3) that [the Board] 'reserves the right to act in the best interest of the County and its residents and businesses, including the right to reject a proposal that is given the highest ranking in the evaluation process."

As we shall explain, the trial court's confusing analysis fails to properly inquire into the ambiguity of the phrase "competitive bidding," fails to consider substantial extrinsic evidence bearing upon the meaning of that ambiguous phrase, fails to recognize that sections 40059 and 49201, which are both part of the 1989 Act and in pari materia, can readily be reconciled, misapplies *Cypress Security*, and ignores important policies regarding the letting of public contracts and settled principles of statutory construction. As we shall explain, the court's ruling renders section 49201, subdivision (c), and subdivision (a)(2) of Humboldt Code section 521-6 meaningless and vindicates a grossly unfair bidding process that would invite the very favoritism, fraud and corruption the law relating to the letting of public contracts is designed to prevent.

**THE STANDARD OF REVIEW**

"On appeal from the denial of a writ of mandate challenging an award of a public contract, we perform the same function as the trial court and are not bound by its determinations. [Citations.] We review the public entity's decision for substantial

13

evidence. [Citations.] Our review is limited to a determination of 'whether the [public entity's] actions were arbitrary, capricious, entirely lacking in evidentiary support, or inconsistent with proper procedure.' [Citations.] In determining these issues, we defer to the [public entity's] factual findings when they are supported by substantial evidence. [Citation.] To the extent our analysis requires us to decide questions of statutory interpretation or determine whether the [public entity's] actions violate applicable law, we exercise our independent judgment. [Citations ]" (*Schram Construction, Inc. v. Regents of University of California* (2010) 187 Cal.App.4th 1040, 1051-1052, fn. omitted.)

"Because of the potential for abuse arising from deviations from strict adherence to [competitive bidding] standards . . . the letting of public contracts universally receives close judicial scrutiny . . . ." (*Konica Business Machines U.S.A., Inc. v. Regents of University of California* (1988) 206 Cal.App.3d 449, 456 (*Konica*).)

## ANALYSIS

### 1.

### *The Phrase "Competitive Bidding" is Ambiguous*

In construing statutes and ordinances our task is to ascertain and give effect to the legislative intent. (*People v. Murphy* (2001) 25 Cal.4th 136, 142.) "We begin by examining the words of the statute, giving them their usual and ordinary meaning and construing them in the context of the statute as a whole. [Citations.] If the plain language of the statute is unambiguous and does not involve an absurdity, the plain meaning governs. [Citations.] If the statute is ambiguous, the court may consider a variety of extrinsic aids, including the apparent purpose of the statute. [Citation.]" (*Leonte v. ACS State & Local Solutions, Inc.* (2004) 123 Cal.App.4th 521, 526-527.)

The trial court found that the phrase "competitive bidding" has a plain meaning and therefore does not need interpretation. According to the court, "[a]ny common, ordinary meaning of 'competitive bidding' would be met by Respondent's having solicited and evaluated a number of bids submitted in competition for the award of the

14

Franchise," a definition excludes not just a "lowest responsible bidder" requirement, but even a "lowest bidder" requirement; indeed, the definition eliminates any requirement at all.  The court's analysis, which is really no more than a conclusion, is far too simplistic.

Ambiguity exists when a statute is capable of being understood by reasonably well-informed persons in two or more different senses. (2A Singer & Singer, Sutherland, *Statutes and Statutory Construction* (7th ed., 2007) § 45:2, p. 13)  Considered in the context of the government procurement process, "competitive bidding" is capable of being understood in two senses: (1) as a process whereby a franchise, contract, license, or permit shall be awarded on the basis of the lowest bid, and (2) as a process that also takes into account the qualifications of the bidder, so that the low bid may be rejected if the bidder does not qualify as a responsible bidder.   County's Director of Public Works, who must be deemed a reasonably well-informed government procurement officer, has at different times adopted each of these different meanings.  In his March 3 report to the Board, he stated that the proposed RFP did not involve "competitive bidding" because it considered criteria "beyond strictly pricing," but in his May 13 report he changed his position, declaring that the same RFP constituted "competitive bidding," even though the evaluative criteria it prescribed went beyond merely pricing.

By using the absence in the ordinance of any explicit reference to a "qualified" or "responsible" bidder as the basis upon which to conclude the ordinance imposed no "lowest responsible bidder" requirement—an approach many courts reject [6]—the court

---

[6] Where a statute, charter, or ordinance requires a public contract to be let to the "lowest" bidder without qualifying it by the words such as "responsible," "qualified," or "best," many courts have "held that the provision is not to be 'construed literally, and accepted as an absolute restriction,' and that it does not mean that the contract must be awarded to the lowest bidder without regard to his or her fitness, responsibility, or capacity to perform the work or furnish the supplies." (10 McQuillin, Municipal Corporations, *supra*, § 29:81, at pp. 648-649, citing *J.W. Rombach, Inc. v. Parish of Jefferson* (La. Ct. of App. 5th Cir. 1996) 670 So.2d 1305; *Huey Stockstill, Inc. v. Hales* (Miss. 1998) 730 So.2d 539; *Thompson Electronics Co. v. Easter Owens/Integrated Systems, Inc.* (Ill.App.Ct. 3d Dist. 1998) 702 N.E.2d 1016; *State ex rel. George Jensen Printing Company v. Snively* (Minn. 1928) 221 N.W. 535; *Clapton v. Taylor* (1892) 49 Mo.App. 117; *International Motor Co. v. City of Plainfield* (N.J.L. 1921) 115 A. 391;

15

relieved itself of the need to inquire whether the phrase "competitive bidding" was capable of being understood by reasonably well-informed persons in different ways.  In essence, the court used the feature of the ordinance rendering the phrase ambiguous as the basis upon which to conclude it was unambiguous.   As a leading treatise observes, "[t]he assertion in a judicial opinion that a statute needs no interpretation because it is 'clear and unambiguous' is in reality evidence the court has already considered and construed  the Act.  It may also signify that the court is unwilling to consider evidence bearing on the question how the statute should be construed, and is instead declaring its effect on the basis of the judge's own uninstructed and unrationalized impression of its meaning." (2A Singer & Singer, Sutherland Statutes and Statutory Interpretation, *supra*, § 45:2, p. 16.)

That is what appears to have happened here. The trial court's statements that "competitive bidding" does not include a "lowest responsible bidder" requirement and consists simply of "having solicited and evaluated a number of bids submitted in competition for the award," without regard to any evaluative criteria and process, is in fact a judicial interpretation of the phrase "competitive bidding." made without regard to extrinsic evidence bearing on its proper interpretation.

**2.**
***The Phrase "Competitive Bidding" in Humboldt Code Section 521-6***
***and Section 40059 Must be Construed in Pari Materia with Related Statutes***
***Applying a "Lowest Responsible Bidder" Requirement        t***

Where, as here, the statutory language is susceptible of more than one reasonable interpretation, " ' " 'we look to a variety of extrinsic aids, including the ostensible objects to be achieved, the evils to be remedied, the legislative history, public policy, contemporaneous administrative construction, and the statutory scheme of which the statute is a part.' '" ' " (*People ex rel. Lockyer v. A. J. Reynolds Tobacco Co.* (2005) 37

---

*Prime Contractors, Inc. v. Girard* (Ohio App. 1995) 655 N.E.2d 411; *Kaufman v. City of Erie* (Pa. 1934) 175 A. 406; *Pearlman v. City of Pittsburgh* (Pa. 1931) 155 A. 118*; Krat z v. City of Allentown* (Pa. 1931) 155 A. 116; *Wilson v. City of New Castle* (Pa. 1930) 152 A. 102.)

Cal.4th 707, 715, citing *People v. Jefferson* (1999) 21 Cal.4th 86, 94.)   Our responsibility is to " 'select the construction that comports most closely with the apparent intent of the Legislature, with a view toward promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences.' [Citations.]" (*People v. Coronado* (1995) 12 Cal.4th 145, 151.)  "In addition, we are required to harmonize statutes by considering a particular clause or section in 'the context of the . . . statutory scheme of which it is part.'  [Citations.]" (*Ordlock v. Franchise Tax Bd.* (2006) 38 Cal.4th 897, 909.)

The most edifying extrinsic evidence available as to the meaning of the phrase "competitive bidding," as it appears in Humboldt Code section 521.6 and section 40059, consists of other statutes pertaining to the same subject—i.e., statutes in pari materia—or enacted at the same time.

As we have seen, the language of Humboldt Code section 521-6, subdivision (a)(2), derives from its use in section 40059.  However, although section 40059 is no more illuminating than Section 521-6 as to whether the "lowest responsible bidder" requirement is implicit in the phrase, other provisions of the 1989 Act are helpful; particularly sections 49200 and 49201.

Section 49200 provides that "[e]very franchise or permit for the collection, disposal, or destruction, or any combination thereof, of garbage, waste, offal, and debris, shall be granted by the board of supervisors only under the terms and conditions of this chapter."

Subdivisions (a) through (c) of section 49201 define the process by which such franchises or permits are to be awarded, including the manner in which franchises or permits bids are to be authorized and bids solicited and evaluated. Subdivision (a) provides that "Any county may, by resolution adopted by the board of supervisors, call for bids for the granting of a franchise or permit, exclusive or otherwise, for the collection [and] disposal [of garbage and other forms of waste,] according to the terms and conditions set forth in the resolution, for a period of time not to exceed 25 years." Subdivision (b) states that after adoption of the resolution, the board of supervisors shall

17

provide the public specified notice of "the terms and conditions in the resolution and the time, date, and place for the receiving and opening of sealed bids, which shall not be sooner than four full weeks from the date of the first publication of the notice." Subdivision (c) of section 49201, which is most relevant to our analysis, provides, as material, that "[u]pon examination by the board of supervisors of the bids, the franchise or permit may be awarded to the lowest *qualified* bidder." (Italics added.) The "lowest qualified bidder" requirement seems to us, as it did to the trial court, the functional equivalent of the "lowest responsible bidder" requirement. The trial court did not, however, find this provision exegetically helpful.

Acknowledging that sections 49200 and 49201 "clearly require an award to the lowest responsible bidder," the trial court found it "inexplicable" that section 40059 "*clearly allows* Respondent to make the award to someone other than the lowest responsible bidder." (Italics in original.) The court resolved this perceived conflict by adopting the reasoning of a 1996 Opinion of the Attorney General (79 Ops.Cal.Atty.Gen. 28, *supra*, 1996 WL 179823) which found a different conflict between the two statutes and, in that context, concluded that section 40059 prevailed over section 49201. At the hearing, the trial court quoted the following portion of the opinion in which the Attorney General explained the significance of the fact that section 40059 commences with the phrase " 'Notwithstanding any other provision of law . . .' . . . It is as if the limitations of sections 49200-49205 do not exist if a county acts pursuant to the grant of authority contained in section 40059. The Legislature has recognized that the terms of section 40059 may be inconsistent with the language of some other statute or statutes and has determined that the conflict should be resolved in favor of section 40059's terms and conditions." (79 Ops.Cal.Atty.Gen., at p. 33.) The trial court's reliance on this language was unjustified.

First of all, with respect to the issues before us, the County has acted not just pursuant to the grant of authority in section 40059, but pursuant to *both* section 40059

18

and sections 49200-49205,[7] all of which are part of the same Act. The Board enacted Humboldt Code section 521-6 in 2008 pursuant to authority granted by section 40059; however, the Board approved the RFP on March 22, 2011, pursuant to the prescriptions set forth in sections 49200 through 49205. Section 40059 is germane to this case only because it authorizes a county to dispense with "competitive bidding" and appears to be the basis for Humboldt code section 521-6, which employs the same phrase. The *substance* of section 40059 does not bear upon any issue in this case, because the County did not desire to dispense with "competitive bidding" and therefore never made the findings required by Section 521-6(a)(2) in order to do so.[8] Although they strongly disagree about the meaning of the phrase, the parties agree that the Board intended to use and employed a process that constitutes "competitive bidding."

Moreover, and much more importantly, there is no conflict between sections 40059 and 49201 regarding any matter at issue in this case. The "conflict" perceived by the trial court was one of its own making.

The Attorney General's opinion the trial court relied upon addressed the question: "May a county which awarded an exclusive trash collection franchise in 1982 after

---

[7] In addition to sections 49200 and 49201, which we have described, section 49202 requires the successful bidder to file a bond upon grant of the franchise, section 49203 authorizes the county to impose terms and conditions other than those proposed by the county not in conflict with that act, and section 49204 permits bidders to propose terms and conditions that may be in addition to or conflict with those in the resolution or notice of calling for bids, provided they are not in conflict with Division 30 of the Public Resources Code. Section 49205 prescribes the allowable extension of franchise terms.

[8] Dispensing with competitive bidding may be appropriate and consistent with the public interest "where the nature of the subject of the contract is such that competitive proposals would be unavailing or would not produce an advantage, and the advertisement for competitive bid would thus be undesirable, impractical, or impossible. [Citations.]" (*Graydon v. Pasadena Redevelopment Agency* (1980) 104 Cal.App.3d 631, 635-636; accord, League of California Cities CEB, The California Municipal Law Handbook 2012, § 7.5 at p. 732 ["competitive bidding requirement may also be waived in the following situations: in the event of emergency; in contracts for professional services; in contracts for special services; and when the design-build method is used"]; 10 McQuillin, Municipal Corporations, § 29:38, at pp. 497-501.)

receiving competitive bids, and which terminated that agreement and executed another exclusive franchise with the same franchisee in 1985, now terminate the existing franchise and award a new contract to the same franchisee without obtaining competitive bids?" (79 Ops.Cal.Atty.Gen. 28, *supra*, 28.)  The conflict the Attorney General resolved resulted from the fact that sections 49200 through 49205 require a county to obtain competitive bids before awarding a trash collection franchise, whereas section 40059 allows a county to award a trash collection franchise without ever obtaining competitive bids.  The question presented was the *necessity* for competitive bids*, not the nature of the competitive bidding process.*  The *necessity* for competitive bids is not an issue here because, as we have said, the County never sought to proceed without competitive bidding, and could not do so under its own ordinance without findings it never made.

The trial court erred in assuming that section 40059 prevails over section 49201 not just as to matters about which they genuinely conflict, but as to all matters.  That is not so. The 1989 Act itself provides that the part in which section 40059 appears "shall prevail" over the part of the measure in which sections 49200 – 49205 appear*,* only "[i]n the event of any conflict or inconsistency" between the two parts of the 1989 Act. (Stats. 1989, ch. 1095, § 32, subd. (c), quoted in 79 Ops. Cal.Atty.Gen., *supra*, at p. 34; see also *Rodeo Sanitary Dist. v. Board of Supervisors* (1999) 71 Cal.App.4th 1443, 1451 [section 40059 only "overrides or supersedes . . . other provisions of the 1989 Act *which might indicate to the contrary*"], italics added.)  The "lowest qualified bidder" requirement of section 49201 is not in conflict or inconsistent with the references in section 40059 to "competitive bidding," or with anything else in that statute, which does not relate to the substantive and procedural requirements of the "competitive bidding" process.

As the Attorney General explains, the legislative history of the provisions now contained in section 40059 (which were previously contained in Government Code section 66756, now repealed) shows the measure was designed "to grant cities, counties, and other local governmental agencies the authority to determine whether trash collection services should be 'provided with or without competitive bidding,'" because previously "only some agencies could provide such services under contract without obtaining

20

competitive bids." (79 Ops.Cal.Atty.Gen., *supra*, at p. 33.) The need for the legislation was created by the opinion of the United States Supreme Court in *City of Lafayette v. Louisiana Power & Light Co.* (1978) 435 U.S. 389 (*Lafayette*), which addressed the extent to which federal antitrust laws prohibit a state's cities from imposing certain anticompetitive restraints " 'as an act of government.' " (*Id.* at p. 391.) As stated in the report of the Senate Committee on Local Government on the measure now embodied in section 40059, the holding in *Lafayette*—that the definition of "person" or "persons" covered by federal antitrust laws included cities—caused concern "that local agencies may, in the provision of solid waste disposal services either directly or by contract or franchise as authorized by existing law, be construed to be subject to federal anti-trust laws. . . . The [*Lafayette*] court held that where a local government [agency] provides a public utility service, such activity may be exempt from the provisions of federal anti-trust laws *only if State law authorizes such anti-competitive or monopoly activity*." (Report of the Senate Committee on Local Government on AB 2454 (McVittie), p. 1 (June 16, 1980), italics added.)

Whether the competitive bidding referred to in section 40059 embodies a "lowest responsible bidder" requirement is irrelevant to the purpose of that statute, which was to authorize local governmental agencies to decide for themselves whether to award franchises for solid waste handling services on the basis of "competitive bidding" and thereby exempt this activity from application federal antitrust laws. Because the *nature* of the competitive bidding process a county may require in awarding such franchises was addressed by the Legislature elsewhere—most specifically in sections 49200 through 49205—there was no need for the Legislature to specify *in section 40059* whether the "competitive bidding" process a county may employ in awarding franchises for solid waste handling services embodies a "lowest responsible bidder" requirement. Since section 49201 is among the provisions of the 1989 Act defining that bidding process, it was a more appropriate place than section 40059 for the Legislature to prescribe the lowest "responsible" or "qualified" bidder requirement.

21

The court's conclusion that section 40059 prevails over section 49201 for all purposes, including the competitive bidding process applicable to franchises for solid waste handling services, renders section 49201 meaningless, thus undermining the legislative effort to define the terms and conditions pursuant to which counties may grant such franchises when, as in this case, they wish to employ a "competitive bidding" process.

Indifferent to the absence of any conflict in the application to this case of sections 49201 and 40059, and the consequences of its ruling, the trial court made no attempt to reconcile the two provisions of the 1989 Act insofar as they relate to the properties of the "competitive bidding" process applicable to the franchise at issue. While statutes relating to the same matter or subject are regularly employed as extrinsic aids in interpretation (see, e.g., Y*assin v. Solis* (2010) 184 Cal.App.4th 524, 536, citing *Altaville Drug Store, Inc. v. Employment Development Department* (1988) 44 Cal.3d 231, 236, fn. 4; *Old Homestead Bakery, Inc. v. Marsh* (1925) 75 Cal.App. 247, 258.), " '[a]pplication of the rule that statutes in pari materia should be construed together is most justified, and light from that source has the greatest probative force, in the case of statutes relating to the same subject matter that were passed at the same session of the legislature, especially if they were passed or approved or take effect on the same day . . . .' [Citation.] When as in the present case both statutes are part of the same bill, enacted and chaptered together, the rule requiring the courts to reconcile the statutes is even more compelling, for neither can be viewed as an implied repeal of the other. [Citation.]" [9] (*International Business Machines v. State Bd. of Equalization* (1980) 26 Cal.3d 923, 932.)

Sections 40059 and 49201 can easily be harmonized. Statutes and ordinances that authorize or require competitive bidding in the letting of public contracts ordinarily serve the purpose " 'of inviting competition, to guard against favoritism, improvidence, extravagance, fraud and corruption, and to secure the best work or supplies at the lowest

---

[9] Section 40059 is in Division 30, Part 1 of the Public Resources Code, and sections 49200 through 49205, are in Part 8 of that Division of the same Code, but all of these statutes were added by Statutes 1989, chapter 1095,section 22.

22

price practicable.'" (*Domar Electric, Inc. v. City of Los Angeles* (1994) 9 Cal.4th 161, 173 (*Domar*).) Such measures "are enacted for the benefit of property holders and taxpayers, and not for the benefit of or enrichment of bidders, and should be so construed and administered as to accomplish said purpose fairly and reasonably with sole reference to the public interest. These provisions are strictly construed by the courts, and will not be extended beyond their reasonable purpose. Competitive bidding provisions must be read in the light of the reason for their enactment, or they will be applied where they were not intended to operate and thus deny municipalities authority to deal with problems in a sensible practical way.' [Citation.] Thus, charters requiring competitive bidding are not to be given such a construction as to defeat the object of insuring economy and excluding favoritism and corruption. [Laws] requiring competitive bidding are not to be given such a construction as to defeat the object of insuring economy and excluding favoritism and corruption. [Citations.]" (*Ibid.*)

Section 40059 is not designed to encourage or require "competitive bidding," but merely to allow counties to decide for themselves whether to award franchises for solid waste handling services through a "competitive bidding" process. Sections 49200 through 49205, on the other hand, assume that, as here, the county has decided to employ a "competitive bidding" process, and address the manner in which the process must be carried out, including use of a "lowest responsible bidder" requirement. The "lowest qualified bidder" requirement of section 49201 serves the purposes of insuring economy and eliminating fraud and corruption in a competitive bidding process, while section 40059 is silent as to whether "competitive bidding" includes a "lowest responsible" or "qualified bidder" requirement. It seems to us absurd to interpret the silent statute as overriding the clear direction of the one that speaks explicitly to the issue and advances the policy favored by the law. By employing the ambiguity in section 40059 to eliminate the "lowest responsible bidder" requirement imposed by section 49201, the trial court extended the reach of section 40059 into an area in which it was not intended to operate, and in so doing "defeat[ed] the object of insuring economy and excluding favoritism and corruption" in the letting of public contracts. (*Domar, supra,* 9 Cal.4th at p. 173.)

23

Distracted by section 40059, the trial court ignored the fact that, like the provisions of the Public Contract Code appellant vainly urged the court to consider extrinsic evidence of legislative intent (Pub. Contract Code, § § 10180, 10344), California statutes authorizing local government agencies to award public works contracts invariably require the governing board of a county or city to award the contract to the "lowest responsible bidder" (See, e.g., Pub. Contract Code, §§ 20128 [counties] and 20162 [cities].)   If, as provided in the statutes just cited, Boards of Supervisors must award a public works contract to the "lowest responsible bidder," and city councils must do so where the public project involves an expenditure exceeding $5,000, why (even if section 49201 did not exist) would the Legislature want to relieve a local governmental agency of that requirement when awarding a long-term exclusive franchise for solid waste handling services? The trial court made no such inquiry.

The trial court also unjustifiably ignored appellant's request that it inquire into the technical meaning of the phrase "competitive bidding" when used in the context of public procurement, which also could properly have been used to discern the real intention of the law-making power. (*In re Smith* (1928) 88 Cal.App. 464, 467-468; *Yassin v. Solis, supra*, 184 Cal.App.4th 524, 531; *Murray's Iron Works, Inc. v. Boyce* (2008) 158 Cal.App.4th 1279, 1299; 2A Singer & Singer, Sutherland Statutory Construction, *supra*, § 47:29, p. 474, fns. omitted ["In the absence of legislative intent to the contrary, or other overriding evidence of a different meaning, technical terms or terms of art used in a statute are presumed to have their technical meaning."].)

Virtually all authorities on government procurement and public contract law define the competitive sealed bidding process employed by the County in this case as one in which "the award is made to the responsible bidder having the lowest responsive bid." (Conway, *State and Local Procurement*, ABA Section of State and Local Government Law (2012) at p. 64.)  Both the National Association of State Procurement Officials and the National Institute of Governmental Purchasing, define "competitive sealed bidding" as "[t]he preferred method for acquiring goods, services, and construction for public use in which award is made to the lowest responsive and responsible bidder."  (Nat'l Assn. of

24

State Procurement Officials, *State and Local Government Procurement: A Practical Guide* (2008) at p. 307; Nat'l. Inst. of Governmental Purchasing, *Public Procurement: Dictionary of Terms* (2010) at p. 27.) According to one authority, "[t]he competitive bidding process in public contracting *presumes* that award will be made to the *qualified* individual or firm submitting the lowest price quotations." (Keyes, *Encyclopedic Dictionary of Contract and Procurement Law* (5th ed. 1992), at p. 47, italics added.)

The court's analysis of the Board's intention with regard to a lowest responsible bidder requirement was irrelevant to the fundamental question whether governing law imposed the requirement. As earlier noted, the court reasoned that "the Board must *not* have intended to direct the PWD to adopt a 'lowest responsible bidder' requirement, because the Board unquestionably approved the RFP prepared by the PWD that contained no such requirement." Even if the court's view of the Board's intention was correct, however, the Board lacked the power to avoid the "lowest qualified bidder" requirement of section 49201.

In any event, the court's reading of the RFP grossly distorts its meaning and purpose. Though the RFP does not refer to the lowest responsible bidder requirement explicitly, it could not more strongly imply that requirement. As the Director of the PWD stated in his May 13 report to the Board, the RFP required the review committee to evaluate the bidders not just on the basis of "service rates," but on five other weighted criteria also specified in the RFP ("responsiveness to the RFP, company qualifications and comparable experience, financial creditworthiness, acceptance of franchise terms, and the company's proposed management plan") and the RFP states that percentage scores "will reflect the extent to which criteria are fulfilled relative to other proposals." This specification of the evaluative criteria employed to assess bidders "responsibility" or "qualifications," and comparison of bidders' scores on the basis thereof, and the provision in the RFP that in certain cases in which "a bidder may not be technically qualified . . . a proposal may be rejected even though it proposes the lowest monthly fee for subscribers," can only mean that the franchise is to be awarded the lowest responsible bidder.

The RFP describes in detail the nature of the inquiry the review committee will engage in with respect to each of the specified criteria. For example, with respect to the "management plan" bidders are required to submit, the RFP directs that the plan describe "how the bidder plans to provide for the collection and disposal of solid waste and collection of recyclables. . . . The description must include, but not be limited to: (a) an explanation of the method(s) [by which] recyclable materials will be collected and how the bidder will minimize the amount of rejects that will be produced; (b) any potential service improvements; (c) a description of how the bidder will ensure that availability of sufficient personnel and equipment to provide satisfactory service; and (d) a description of how the bidder will ensure that quality subscriber services will be provided." These requirements, and numerous others relating to each one of the specified criteria set forth in the Board-approved RFP, were obviously designed to transparently provide the "common basis" upon which the review committee and the Board would ascertain and score bidder's qualifications or responsibility.

The RFP before us "does not clearly provide potential bidders with notice that a fully complying bid may be rejected in favor of one which is not" (*Konica, supra*, 206 Cal.App.3d at p. 457), or that bids would be evaluated on the basis of criteria not identified in the RFP or otherwise disclosed prior to the submission of bids. Bidders cannot be required to guess at the standards by which they will be measured, and are entitled to expect that the bid that most fully satisfies the specified criteria would be awarded the franchise.

Because the percentage scores of all bidders were in a very narrow range, the PWD review committee appears to have determined that all four bidders were "qualified" or "responsible"; the favorable service rate proposed by appellant, which was weighted at 65 percent out of a possible 100 percent, was the dispositive factor and reason the review committee recommended appellant be awarded the franchise. As one authority succinctly describes the process, "the public official charged with the duty of making the award of contract to the lowest responsible bidder must determine two things in order to make a valid award: (1) the responsibility of the bidders, and (2) which of the responsible bidders

26

has submitted the lowest bid. The second step requires only a comparison of arithmetical figures and does not involve the exercise of judgment and discretion." (Rosenbaum, *Criteria for Awarding Public Contracts to the Lowest Responsible Bidder* (1942) 28 Cornell L. Q. 37, at pp. 40-41) In *City of Inglewood-L.A. County Civic Center Auth. v. Superior Court, supra,* 7 Cal.3d 861, Justice Mosk stated the proposition this way: "a contract must be awarded to the lowest bidder unless it is found that he is not responsible, i.e., not qualified to do the particular work under consideration. Whether or not an express finding of nonresponsiveness is required [citation], if a contract is awarded to one other than the lowest monetary bidder, the ineluctable implication is that the latter is not responsible." (*Id*. at p. 867; see also McQuillin, Municipal Corporations, *supra*, § 29:38 at pp. 651-652 [absent a valid provision of a statute or ordinance giving preference to certain types of businesses*, "*the lowest responsible bidder who submits a sample which complies with the standard fixed by the proposal is entitled to be awarded the contract."]; League of California Cities CEB, The California Municipal Law Handbook 2012, § 7.15 at p. 735 ["If the lowest monetary bidder is responsible and submits a responsive bid*,* the contract must be awarded to the lowest monetary bidder even if another bidder is more responsible"].)

In short, for the foregoing reasons, the substance of the RFP and the conduct of the PWD and its review committee are all consonant with acceptance and application of the "lowest responsible bidder" requirement. By imputing to the RFP a meaning and consequence it does not have, and by failing to properly resolve an ambiguity so as to eliminate conflict between provisions of the 1989 Act, the trial court effectively eliminated the "lowest responsible bidder" requirement of the 1989 Act (insofar as it relates to county franchises for solid waste handling services obtained through "competitive bidding") which is among the paramount precepts of public contract law.

**3.**

***The Manner in Which the Franchise was Awarded Deviated***
***From Strict Compliance with Applicable Bidding Requirements***
***and Gave the Successful Bidder an Unfair Advantage***

As noted at the outset of our analysis, "the letting of public contracts universally receives close judicial scrutiny" (*Konica, supra,* 206 Cal.App.3d at p. 456) because deviations from strict adherence to competitive bidding standards may facilitate corruption or extravagance, or affect the amount of bids or the response of potential bidders.[10] (*Schram Construction, Inc. v. Regents of University of California, supra*, 187 Cal.App.4th at p. 1061; *Konica, supra*, 206 Cal.App.3d at pp. 456-457; *Charles L. Harney, Inc. v. Durkee* (1951) 107 Cal.App.2d 570, 578.) As will be seen, the deviations from applicable bidding requirements in this case gave real party in interest an enormous unfair advantage over other bidders.

We begin our analysis by examining the trial court's rejection of appellant's attack on the fairness of the process in which the franchise was awarded. In finding the process fair, the court relied on our opinion in *Cypress Security, LLC v. City and County of San Francisco* (2010) 184 Cal.App.4th 1003 (*Cypress Security*), in which we affirmed denial of relief to an unsuccessful bidder's challenge of an award of a public contract to a competitor. The language in *Cypress Security* the court relied upon was the conventional statement that in a mandamus action challenging an award of a public contract, review is " 'limited to an examination of the proceedings to determine whether the City's actions were arbitrary, capricious, entirely lacking in evidentiary support *or inconsistent with proper procedure*. There is a presumption that the City's actions were supported by

---

[10] As one court has observed, the salutary effects of the "lowest responsible bidder" requirement also include the safeguarding of public officials "from temptation and opportunity for fraud and favoritism," as they "assist in removing suspicion of unfairness and favoritism, and relieve honest men [and women] upon whom these duties devolve of unjust charges." (*Hannon v. Board of Education* (Okla. 1909) 107 Pac. 646, 655.) Thus protected, honest citizens, "without fear of being corrupted or slandered" will be willing to enter public service and "the dishonest man [or woman] will find more difficulty in plundering the public." (*Ibid.*)

substantial evidence, and [petitioner/plaintiff] has the burden of proving otherwise.' " (*Id*. at p. 1010, italics added.) The trial court ignored the italicized phrase, which is most pertinent to this case. There was no procedural problem in *Cypress Security* because San Francisco is a charter city, to which state bidding requirements do not apply (*R & A Vending Services, Inc. v. City of Los Angeles* (1985) 172 Cal.App.3d 1188, 1191-1192), the bidding process prescribed by the applicable provision of the city charter did not require the award to go to the lowest responsible bidder, and the successful bidder's proposal substantially conformed to the RFP. (*Cypress Security,* at pp. 1010, 1015-1018.) None of those factors are present here. As we have seen, the bidding process prescribed by applicable state statutes and county ordinance, as well as the RFP, all embody a "lowest responsible bidder" requirement.

The critical deviation from the proper bidding process in this case was from the provision of the RFP stating that any modifications of its provisions, such as changing the evaluative criteria, must be made "*prior to the date and time fixed for submission of proposals*, by issuance of a revision to all parties that have received the RFP." (Italics added.) Ignoring this requirement, and also the evaluative criteria identified in the RFP and employed by the PWD, the Board not only changed the criteria after bids were unsealed, but did so by introducing a previously unknown factor that appears to have disadvantaged all bidders except the one who received the franchise. If a majority of the Board believed the evaluation of bids would turn on whether a bidder was locally owned and operated, meaning based in the Willow Creek area—and not in any other city or town in Humboldt County (the losing bidders were based in Fortuna, Blue Lake, and McKinley)—Tom's Trash would probably have been the only bidder, which would have effectively eliminated competition. If the goal was to award the franchise to a Willow Creek area owner and employer, and the Board could properly find that "the public health, safety and well-being are best served" by doing so, the Board could have lawfully done that without competitive bidding. But the Board did not take that course. Instead, it turned the evaluative criteria and process described in the RFP, and the detrimental

29

reliance thereon of the bidders, into a charade.[11]  One need not be Raymond Chandler to see that such a scenario could easily be employed to facilitate favoritism, fraud, corruption and extravagance.

"  'A basic rule of competitive bidding is that bids must conform to specifications, and if a bid does not so conform, it may not be accepted.  [Citations.]' "  (*Konica, supra*, 206 Cal.App.3d at p. 454, quoting 47 Ops.Cal.Atty.Gen. 129, 130-131 (1966*)*; *Valley Crest Landscape, Inc. v. City Council* (1966) 41 Cal.App.4th 1432, 1440.)  "[N]otices sent to the bidders changing the specifications after bids have been advertised for and received render the contract invalid. A contract will be set aside where specifications are changed after the bidding has been closed." (10 McQuillin, Municipal Corporations, *supra,* § 29.69, at p. 589, fns. omitted, and cases there cited.)

It is appropriate to re-emphasize that, though it could have, the Board never rectified its failure to employ the evaluative criteria specified in the RFP it approved.  As earlier noted, the Director of the PWD and County Counsel informed the Board that it could choose not to award the exclusive franchise to appellant, but that if it chose to award the exclusive franchise to another bidder, it would need to evaluate the proposals *on the same basis as they had been evaluated by the PWD review committee; that is, on the basis of the criteria outlined in the RFP*.  This advice went unheeded.  The incorporation in Supervisor Sundberg's motion to award the franchise to Tom's Trash of

---

[11] The trial court reached a different conclusion because the RFP "made it abundantly clear that: (1) the recommendation of the review committee was not binding on the Board; (2) factors other than those listed in the RFP could be considered; and (3) that [the County] 'reserves the right to act in the best interest of the County and its residents and businesses, including the right to reject a proposal that is given the highest ranking in the evaluation process.' "  However, neither the provisions referred to by the court nor anything else in the RFP told bidders that the evaluative criteria specified in the RFP or the weight assigned each criterion could be materially changed after bids had been submitted, which not only violates an express provision of the RFP but makes a mockery of the RFP.  An RFP cannot be employed by a local governmental agency to exempt itself from statutory duties, such as that imposed by the "lowest qualified bidder" requirement. (§ 49201, subd. (c).)  Though the  RFP does provide  that "a proposal may be rejected even though it proposes the lowest monthly fee for subscribers," that caveat applies where the low bidder is not "technically qualified," which is not here the case.

30

County Counsel's suggestion that the Board reevaluate the bids incorporated a *suggestion*; it did not itself constitute an actual reevaluation of the bids received. Moreover, as we have said, the franchise was awarded primarily on the basis of a criterion never mentioned in the RFP.

We do not believe Tom's Trash was awarded the franchise on the basis of favoritism, fraud or corruption, because the record does not show that. But the fact that bidders were misled and did not compete on a level playing field opens the door to such possibilities, and that is enough to warrant judicial intervention. The mere potential for abuses likely to arise from significant deviations from standards designed to eliminate favoritism, fraud, and corruption, avoid misuse of public funds, and stimulate advantageous market place competition is a sufficient basis upon which to grant judicial relief even without a showing that the deviations actually resulted in such abuses. As stated in *Konica, supra*, 206 Cal.App.3d 449, a "preventive approach is applied even where it is certain there is in fact no corruption or adverse effect upon the bidding process, and the deviations would save the entity money. [Citations.] *The importance of maintaining integrity in government and the ease with which policy goals underlying the requirement for open competitive bidding may be surreptitiously undercut, mandate strict compliance with bidding requirements.* [Citation.]" (*Id.* at pp. 456-457, italics added, cited with approval in *Domar, supra,* 9 Cal.4th at p. 176.) Where, as here, the deviations from such strict compliance are not minor technicalities or nonsubstantive, but rather are capable of facilitating corruption or extravagance, or likely to affect the amount of bids or response of potential bidders, the deviating bid must be set aside. (*Schram Construction, Inc. v Regents of University of California, supra,* 187 Cal.App.4th 1040, 1061; *Ghilotti Construction Co. v. City of Richmond* (1996) 45 Cal.App.4th 897, 907-908; *Konica, supra,* 206 Cal.App.3d at pp. 456-457.)

## 4.

### *Remedy*

"There are essentially two prerequisites to issuance of a writ of mandate under Code of Civil Procedure section 1085: '(1) the respondent has a clear, present, and

usually ministerial duty to act, and (2) the petitioner has a clear, present, and beneficial right to performance of that duty.' [Citation.]" (*Monterey Mechanical Co. v. Sacramento Regional County Sanitation Dist.* (1996) 44 Cal.App.4th 1391, 1413-1414) Those requirements are met in this case. Having elected under Humboldt Code section 521-6 to proceed with "competitive bidding," and having found that all bidders were "qualified" or "responsible," the County was statutorily bound to award the franchise, if at all, to the lowest bidder (§ 49201, subd. (c)), and as the lowest responsible bidder, appellant has a beneficial interest in seeing that the franchise is awarded in the manner prescribed by law. Because appellant has the right to require the County to apply the criteria specified in the RFP, as it failed to do, the trial court erred in sustaining award of the franchise to real party in interest. (*Id.* at p. 1414)

The remaining question pertains to the judicial remedies now available to appellant. As the Supreme Court has noted, "the most effective enforcement of the competitive bidding law is to enforce by injunction the representation that the contract will be awarded to the lowest responsible bidder. This is generally done by setting aside the contract award to the higher bidder. [Citations.]" (*Kajima/Ray Wilson v. Los Angeles County Metropolitan Transportation Authority* (2000) 23 Cal.4th 305, 313, fn. 1 (*Kajima*).)[12] The *Kajima* court also noted, however, that as a practical matter, by the time

---

[12] Injunctive relief is "most effective" because " '[a] bidder deprived of a public contract, by the wrongful misaward of that contract, has neither a tort nor a breach of contract action against the public agency" (*Kajima, supra*, 23 Cal.4th 305 at p. 315, fn. 2), and the only monetary relief available to such a bidder is that recoverable under a promissory estoppel theory, which is limited to bid preparation costs, and does not include lost profits. (*Id*. at p. 315) Moreover, though successful judicial enforcement of the competitive bidding laws usually confers significant pecuniary and nonpecuniary benefits on the general public or a large class of persons, and the necessity and financial burden of such private enforcement may make an award of reasonable attorney fees appropriate, such an award has been held inappropriate under the "private attorney general" theory codified in Code of Civil Procedure section 1021.5 in a case involving competitive bidding law in which the granting of injunctive relief remained possible, because the private enforcement was incentivized by the plaintiff's economic interest, to which the public benefit is coincidental. (*United Systems of Arkansas, Inc. v. Stamison* (1998) 63 Cal.App.4th 1001, 1013; cf., *Kajima, supra*, 23 Cal.4th at pp. 309-310, where,

the basis for relief is persuasively demonstrated, the underlying contract may already have been substantially or fully performed" (*Kajima, supra*, 23 Cal.4th at p. 313, fn. 1, citing *Swinerton & Walberg Co. v. City of Inglewood–L.A. County Civic Center Authority* (1974) 40 Cal.App.3d 98, 103, as an example of this recurring scenario), so that it can no longer be awarded to the lowest responsible bidder. That is apparently not the case here, however, because the 10-year exclusive franchise has not yet been fully or even substantially performed by real party in interest it may in this case be possible to enforce by injunction the representation of the RFP that the franchise will be awarded to the lowest responsible bidder, as directed in *Konica, supra,* 206 Cal.App.3d 449.)[13] This is a matter appropriate for the trial court to consider and determine on remand. If, as now appears, the granting of injunctive relief is practicable, and the County does not elect to dispense with competitive bidding pursuant to section 40059 upon the findings required by Humboldt Code section 521-6, such relief should be granted.

### DISPOSITION

The judgment of the superior court is reversed and the case remanded to that court to enter a judgment granting the petition and to issue a peremptory writ of mandate directing such other relief as may be appropriate in the circumstances and consistent with this opinion. Appellant shall recover its costs on appeal.

---

in determining whether the trial court properly awarded the bidder bid preparation costs and lost profits, the court declined to review the trial court's award of $89,223 in "bid protest costs," which presumably included legal fees.)

[13] In *Konica* the Court of Appeal directed the superior court "to issue a writ mandating the [public agency] to publish a new RFQ and call for rebids within 30 days of our remittitur. Pending acceptance of the successful rebid, [real party in interest] shall continue to provide services conforming to the terms of the now vacated contract and the [public agency] shall compensate [real party in interest] on a per diem basis for services received." (*Konica, supra*, 206 Cal.App.3d at p. 458.)

_____

Kline, P.J.

We concur:

_____

Richman, J.

_____

Brick, J.*

A135744, *Eel River Disposal v. Humboldt*

* Judge of the Alameda County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Trial Court:                          Humboldt County Superior Court

Trial Judge:                          Hon. Dale A. Reinholsten

Attorneys for Appellant:              Harland Law Firm, LLP
                                      Allison G. Jackson

Attorneys for Respondents:            County of Humboldt-County Counsel
                                      Wendy B. Chaitin, County Counsel
                                      Jefferson Billingsley, Deputy County Counsel


No Appearance for Real Party in Interest.